## Mohney *versus* Evans.

1. What are necessaries for either a married woman or a minor, is a question
that is susceptible of no sharp definition, and is generally a question for the
jury under all the circumstances of the case; but the court may in many
cases pronounce authoritatively on the question, and withhold it from the jury.

2. A lad of seventeen years of age was carrying on a farm for his mother,
a widow and his guardian; he purchased a pair of unbroken cattle, which
were received by him and his mother and kept on the farm, and afterwards
exchanged for a horse, which was used to work the farm.   *Held*, that the
question whether the purchase of the cattle was necessary should have been
submitted to the jury.

3. A judge has a right to aid the jury by an expression of his opinion on
the effect of the evidence, but not so as to control or mislead their delibera-
tions.   That which a jury have a right to decide, ought to be so submitted
as to leave them free to decide either way.

ERROR to the Court of Common Pleas of *Armstrong county*.
This was an action of *assumpsit* brought against Peter Evans,

[Mohney v. Evans.]

by his guardian, Charity Evans, to recover the price of a pair of oxen, the price agreed upon being $60. John Evans, the father of defendant, died in Armstrong county some time prior to September 1840, leaving his widow, Charity Evans, and his son Peter and some younger children, surviving him.

At September sessions, 1840, Charity Evans was appointed the guardian of Peter Evans. The estate left by John Evans consisted, almost exclusively, of the farm upon which he died. The widow undertook to continue the farming business, and thus keep the family together, and their support was wholly derived from that source. Peter Evans, being the only child old enough for the purpose, was employed by the widow and guardian as the business-man and farmer, and continued in that position until the trial of this suit, purchasing, with his guardian's consent, all the stock, farming implements, &c., and selling and disposing of the crops and products of the farm.

On the 12th day of March 1858, Peter Evans purchased of Lewis Mohney, the plaintiff, two young cattle, partly broken to the yoke, for the purpose of being used upon the farm for his own benefit and that of the family generally. Mr. Mohney drove the cattle to the house, and delivered them to Peter Evans, and his mother and guardian, Charity Evans. The guardian took charge of them, and directed where they should be put, making no objection, but receiving them with full knowledge of her ward's purchase. The cattle were used upon the place for some time, and then traded for a horse, which continued to do the work of the farm. No objection was ever made to the transaction until Mr. Mohney called for his money, upwards of a year after the purchase, when the guardian and ward both refused to pay the money or restore the property.

The narr. filed contained the common counts, with a special count upon the contract. The note of the ward was not declared upon, but merely used as evidence.

The defendant by his guardian pleaded infancy.

The plaintiff submitted the following points :—

1. That if the jury believe that Charity Evans, as guardian of Peter Evans, employed him in the art and occupation of a farmer, and maintained him from the proceeds of his labour upon such farm, and that with her knowledge and consent he bought the bulls for working use on the farm, the contract is binding, and the verdict should be for the plaintiff.

2. If Charity Evans, as guardian, received the bulls on the farm, and allowed them to be traded for a work-horse for said farm, without objection or notice to plaintiff, the contract is binding, and plaintiff can recover.

3. If the jury believe that Peter Evans purchased the bulls for use on the farm, and his guardian consented to or ratified the

1 P. F. Smith—6

[Mohney *v.* Evans.]

purchase, by receiving into her actual possession the property, knowing it to be unpaid for, and gave no notice to plaintiff when he delivered them, the contract is binding.

4. The question of whether the bulls were necessary is for the jury, and to be ascertained from the situation and circumstances of the minor, and his employment in business, and if these bulls were purchased with the knowledge and consent of the guardian for working on the farm, but traded for a horse which was actually engaged on said farm, it would be the same as if the bulls had been worked thereon instead of the horse.

The court answered all these points in the negative, adding, in answer to the 4th, "so far as it is efficacious to charge Peter Evans."

The court (Buffington, P. J.), after stating the leading facts, charged as follows:—

"A minor is not to be held responsible upon any contract he may make, except for necessaries, as boarding, clothing, medical attendance, schooling, &c., of a character and quality suitable to his age and condition in life. The policy of the law, for wise purposes, has so determined, in order that youth may be protected from the consequences of their own inexperience and folly. This case perhaps, if the jury believe the weight of evidence, is a fitting example, as this boy purchased a pair of bulls, not needed on the farm, and at an exorbitant price. .

"However hard it may be that the plaintiff should lose the value of his property, still he dealt with the defendant at his peril. And although there is no evidence of fraud or unfairness in the plaintiff, still courts and juries cannot enforce contracts declared by the law to be inoperative and inefficacious. If the jury therefore believe that he was not of age at the time of this contract, and that the bulls were not needful to him under the circumstances, we are of the opinion that the contract was not, and is not now, binding on him."

The jury found for the defendant, and the plaintiff having excepted to the opinion of the court, removed the case to this court, and here assigned errors as follows:—

1. The court erred in deciding, as matter of law, in answer to plaintiff's 4th point, that the cattle were not necessary for the defendant, and in charging the jury as follows:—"This case perhaps, if the jury believe the weight of evidence, is a fitting example, as this boy purchased a pair of bulls, not needed on the farm, and at an exorbitant price."

2. The court erred in their answers to the plaintiff's 1st, 2d, . 3d, and 4th points.

*Golden & Neale*, for plaintiff in error.—It is to be left to a jury to decide what are necessaries, and whether furnished at a

[Mohney v. Evans.]

reasonable price: Rundel v. Kuler, 7 Watts 238; Watson v. Hensel, Id. 344; 5 Bouv. Bac. Abr. 118–120; Co. Lit. 172; Hands v. Harvey, 8 T. R. 578.

Here the infant was permitted to carry on the farm by his mother and guardian; what he got was appropriate and used for that purpose: whether it was necessary was for the jury to decide. What are necessaries is to be determined by no fixed rule, but by the circumstances. If the guardian may and does employ his ward in farming, there is an implied authority to the ward to purchase what is necessary to prosecute the business.

*D. Barclay*, for defendant in error.—The evidence does not raise the question, what were necessaries for the infant: Guthrie v. Murphy, 4 Watts 80. An infant's act, when prejudicial, is absolutely void: Leech v. Agnew, 7 Barr 22. The guardian might be responsible if she made the contract, but she could not bind the estate: Eichelberger's Appeal, 8 Watts 84; Miller's Appeal, 1 Barr 266. Where there is an excessive supply even of necessaries, the court, as matter of law, may declare the supply inordinate: Johnson v. Lomis, 6 W. & S. 80.

The opinion of the court was delivered, November 9th 1865, by WOODWARD, C. J.—What are necessaries for either a married woman or a minor, is a question which is susceptible of no sharp definition, and is generally a question for the jury upon all the circumstances of the case. Yet doubtless the court may, in many cases, pronounce authoritatively on the question and withhold it from the jury. If this defendant had been, at seventeen years of age, a school-boy, or an apprentice learning a trade, a judge would have been quite justifiable in pronouncing his purchase of a pair of bulls an invalid contract, but when we learn that he was carrying on a farm for his widowed mother, who had been appointed his legal guardian and with whom he lived—that she permitted the bulls to be received upon the farm—that her son was in the habit of selling the products of the farm and of making purchases; and that he exchanged the bulls for a horse that was used in working the farm, it is not, in view of such circumstances, so clear that the purchase was invalid, and the question whether it was a necessary purchase ought to have been submitted to the jury.

Judge Huston expressed our thought in Rundle v. Keeler, 7 Watts 239 (a case where the minor lived on a farm with his mother), when he said: "We do not mean to give up the restraint which the law puts on those who furnish infants with the means of extravagance; nor to say that an infant can engage in trade or give bonds so as to be bound by them, or make or

[Mohney *v.* Evans.]

endorse promissory notes; nor even to concede that in all cases the jury are the sole judges of what is necessary and proper: the court ought to have a superintending power, and in gross cases set aside a verdict and grant a new trial. But many cases are composed of so many circumstances of which the jury are the proper judges that they must be submitted to them, and we think this was such a case."

If that were a case for the jury much more this one, for here the question of necessity depended on the proper conduct of a farm, and on proof, somewhat conflicting, as to whether it was carried on by the mother or the son, and these were appropriate subjects for the jury. Yet the court withdrew this main point from the jury. There is a single expression near the close of the charge which imports a reference of the question whether the bulls were " needful" to the defendant, but taking the charge altogether, and especially in connection with the answer to the fourth point, it is impossible to say that the question was submitted to the jury. After specifying boarding, clothing, medical attendance, schooling, &c., as necessaries for which minors may contract, the learned judge said: " This case, perhaps, if the jury believe the weight of evidence, is a fitting example, as this boy purchased a pair of bulls *not needed on the farm and at an exorbitant price.*" Then he negatived the 4th point, which asked him to say that it was for the jury to decide whether the bulls were necessary under all the circumstances of the case.

Counsel for the defendant does not pretend that this was a submission of the question of necessity to the jury, and it is very clear to us that it was a withdrawal of that question.

Herein is the only error upon the record. We think this was a case for the jury, and it should have been left to them. The judge had a right to aid them by an expression of his opinion upon the effect of the evidence, but not so as to mislead or control their deliberations. That which a jury have a right to decide ought to be so submitted as to leave them free to decide it either way.

         The judgment is reversed and a *venire de novo* is awarded.