Thomas C. Detwiler *v.* Christian J. Bowers, Appellant.

*Husband and wife—Husband's liability—Surgical operation—Necessaries.*

A surgical operation of doubtful advantage is not a necessary for which a nonassenting father is liable, upon an order given to the surgeon by the wife.

Argued Nov. 15, 1898. Appeal, No. 167, Oct. T., 1897, by defendant, from judgment of C. P. Lancaster Co., Nov. T., 1895, No. 29, on verdict for plaintiff. Before RICE, P. J., OR-

LADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Appeal from judgment of justice in favor of plaintiff. Before BRUBAKER, J.

It appears from the record and evidence that this suit was brought to recover the sum of $65.00 where a surgical operation was performed on the defendant's minor child without his consent, but at the instance and request of the mother, as will more particularly appear by reference to the opinion of the court.

The defendant being on the stand, his counsel made the following offers, which upon objection of plaintiff were rejected and exception granted to defendant.

[The defendant's counsel offered to show by this witness that he never employed Dr. Detwiler to attend his daughter Edna Bowers; that Dr. Detwiler never came to his house with his knowledge or consent; that he had been advised by two physicians, Dr. Yeagley and another physician, prior to the operations performed by Dr. Detwiler, that such operations would likely hasten the death of the child and that it would be better if they were not performed; that the witness's wife was acquainted with the fact that he was opposed to the operations, and she had no authority from him to employ Dr. Detwiler to make it; that the witness never knew Dr. Detwiler, and never saw him until after these operations were performed.] [8]

[Also to show that the witness never knew Dr. Detwiler, and never saw him till after these operations were performed; also to show by the same witness, that at the time this second operation was performed and for which the services are claimed, the breathing of the child was not interfered with by the disease and the operation was not necessary for that purpose.] [9]

Defendant submitted the following points which were refused by the court and exception granted, the points and answers being as follows :

[1. The plaintiff in this case having shown that he never knew or saw defendant before he performed the operation on defendant's infant daughter, and that he, plaintiff, was called to defendant's house in defendant's absence by defendant's wife, and having failed to show urgent necessity or any authority in the wife to make such a contract of employment, the verdict should

be for the defendant.  *Answer :* That point we refuse to answer in that way; as we have already said, the fact of the wife calling in the surgeon, makes the husband liable for the performance of the operation and the work done by the plaintiff.]  [4]

[2. What is necessary for a child is left to the discretion of the parent, and where the infant is in the home of the father and under his direction and control, there must be a clear omission of duty as to necessaries before a third person can interfere and furnish them, and charge the father.   In the present case the defendant had a regular physician, had a right to act upon his advice, which was against an operation, and the mother, after he had so exercised his judgment, had no right to employ another physician and charge defendant with the cost of an operation performed by him.  *Answer :* This is refused, because none of this was brought home to the knowledge of Dr. Detwiler, the physician; he knew nothing of that when he was called in to perform the operation ; but if he had, then, of course, it would be different.   The defendant had no regular physician at that time.]  [5]

The court, BRUBAKER, J., charged the jury in part as follows:

[Now, gentlemen, we will give you in a few words what is the law on this subject.   The presumption is that any debts incurred by a married woman are so incurred by her as the agent or representative of her husband, that is, for necessaries for the husband and his family.   It is the duty of the husband to provide all the necessaries for the family as the head of his household, and he is liable for such necessaries furnished to his wife and children, whether with or without his knowledge.   Now this law is applicable to a claim of this kind.   The law was laid down by the Supreme Court in 1895, two years since, in a suit on an account for medical services rendered to the wife and her children while living with her husband ; and, therefore, it is particularly applicable to the case at hand.   That is all we can say to you in this matter.   If we are correct in our statement of the law, and you believe, as has been testified—and it is uncontroverted, that it was a necessary operation for the welfare of this child, for the purpose of prolonging its life a little longer, and it was skilfully done, you cannot help but believe

that $65.00 was a reasonable sum, because the counsel for the defendant himself says so; and if you believe these facts, then your verdict ought to be one promptly for the plaintiff. . . .] [7]

Verdict and judgment for plaintiff for $65.00. Defendant appealed.

*Errors assigned* among others were (4, 5) answers to defendant's first and second points, reciting same. (7) To portions of the judge's charge, reciting same. (8, 9) Disallowing certain offers of evidence, by defendant, reciting same.

*Chas. I. Landis*, for appellant.—It would be foolish at this late day to argue before a learned court that a husband is not liable for necessaries furnished for the support of his wife and family according to his situation in life : Llewellyn v. Levy, 163 Pa. 647.

What is necessary for the child is left to the discretion of the parent, and where the infant is sub potestate parentis there must be a clear omission of duty as to necessaries before a third person can interfere and furnish them and charge the father: 2 Kent's Commentaries, 192.

If a proper provision has been made for a wife, her husband is not liable even for necessaries furnished for her support: Com. v. Richards, 131 Pa. 209; Cany v. Patton, 2 Ash. 140.

With due deference to the plaintiff the dangerous character of the disease seems to us to have a great deal to do with it, for it would be an extraordinary thing for a reputable physician to perform two dangerous operations upon a small child, collect the first bill by suit, visit the patient thirty-five or forty times, and never see the head of the family at any time or ask by your leave. Such a condition of affairs could of course not exist had the relation between this husband and wife been one of entire amity, but so much the worse for the physician, who would aid, without inquiry, in such an outrageous proceeding.

*Edward D. Reilly* and *Wm. H. Keller*, for appellee.—The question therefore narrows down to the simple one of whether a man is liable for medical attendance upon his minor daughter at the instance and request of his wife, when medical authorities agreed in pronouncing such operation as necessary for the

life and health of the child, and the charge for the same was moderate. Of this the decisions leave no doubt: Moore v. Copley, 165 Pa. 294.

A father is responsible for necessaries furnished his minor daughter: Harland's Accounts, 5 Rawle, 323; Porter v. Powell, 79 Iowa, 277.

A husband is responsible for necessaries furnished his wife and family: 14 Am. & Eng. Ency. of Law, 625; 9 Am. & Eng. Ency. of Law, 815, 816, 830, 831; McGrath v. Donnelly, 131 Pa. 549; Cunningham v. Irwin, 7 S. & R. 247; Llewellyn v. Levy, 163 Pa. 647; Waesch's Est., 166 Pa. 204.

OPINION BY ORLADY, J., February 17, 1899:

The plaintiff, a physician and surgeon in the city of Lancaster, was consulted by the wife of the defendant in regard to the removal of a malignant, cancerous growth on the neck of her five-year-old daughter. At that time the defendant, a day laborer in a tobacco warehouse, was living, with his wife, in the same city, and there is nothing in the case to indicate that he had not faithfully discharged all the duties of an affectionate father to this child, who had been examined by five resident surgeons of good repute, each and all of whom diagnosed the disease as recurrent sarcoma or cancer, and had refused to remove the tumor for the reason that it would certainly return in a short time in a more dangerous form, or in a more vital part of the body, and that an operation would be likely to hasten the death of the child.

In November, 1893, the plaintiff, at the request of the mother and without the knowledge or consent of the father, removed a malignant tumor of a size equal to a quart jar, and soon after presented his bill for services to the father, who refused to pay. A suit was brought before a magistrate, a judgment for $150 was recovered against him, which he paid in February, 1894. Within a week after this operation the plaintiff observed a similar growth in the child's armpit, and in November, 1894, at the request of the mother and without the knowledge or consent of the father, he performed a second operation, by which a large number of cancerous tumors were removed from the armpit. The disease soon after developed in the abdominal glands resulting in the death of the child in June, 1895. The

father refused to pay the charge of the plaintiff for the second operation and a judgment for $65.00 was recovered against him in the court below, from which this appeal was taken. The plaintiff admits that the disease was a necessarily fatal one, and that it finally induced the death of the child, but urges that the first operation was necessary, in his judgment, to prolong the life of the patient, for the reason that the tumor seriously interfered with the child's breathing, and was rapidly increasing in size. This fact is denied by the defendant, and the surgeons called by him described a much more simple operation which would have afforded relief, and not have been so dangerous, nor so likely to induce the development of the disease in other glands. No special reason is given for the necessity of performing the second operation. While it is not shown that the plaintiff had direct notice from the defendant to not perform the second operation, it is clearly shown that he objected to the first, and that the wife knew of this fact. A husband's liability for necessaries furnished to the wife and family, or that medical attendance is such a necessity, cannot be questioned; and he is liable whether they are furnished with or without his knowledge: Moore v. Copley, 165 Pa. 294. Even if they are contracted for by the wife on the credit of her separate estate, the husband is primarily liable: Roll v. Davison, 165 Pa. 392; Waesch's Estate, 166 Pa. 204. But he is liable only for such necessaries as are suitable to his situation and condition in life. If a tradesman furnishes what is not reasonable or prudent he parts with his wares at his peril, and the husband is not liable, except by his assent either express or reasonably implied. It cannot be that a husband whose sole income is the wages of a day laborer would be liable, on the sole order of the wife, for extravagant purchases that are wholly disproportionate to his known condition in life. As to what are necessaries for either a married woman or a minor is a question that is susceptible of no sharp definition, and is generally a question for the jury: Mohney v. Evans, 51 Pa. 80. It is impossible to state a comprehensive definition of family necessaries, they must be left for cases to define as cases arise: Parke v. Kleeber, 37 Pa. 251. This was not an emergency case as in an accident, where a foreign substance is lodged in the throat, nostrils, or ear of a child, and a surgical operation is

imperatively demanded to save life or relieve great suffering. Very respectable authority is adduced by the defendant to show that these heroic operations were injudicious experiments if not mistakes; such services are unlike the furnishing of food, clothing, medicine, trade implements, or conveniences of refined society, etc. The plaintiff describes it as a difficult and dangerous operation which was to afford temporary relief in an incurable case. A surgical operation of such doubtful advantage is not a necessary for which a nonassenting father is liable. The price charged may be a reasonable one, but that is not the question; the known condition of the defendant's family; the absence of inquiry of the father in regard to this hazardous operation; and his known dissent to the first operation, made it incumbent upon the surgeon to make due inquiry of the person who was so naturally and pecuniarily interested as a father. In addition to the disputed necessity for the second operation there were other matters proper for paternal reflection, such as the amount of the charges, the person who should operate, the opportunity of being present when the child would be subjected to the surgeon's knife, with other reasons naturally suggested by the condition of the case, which should have been regarded by the plaintiff. Whether articles of a certain kind or certain subjects of expenditure are or are not necessaries is, under the decided cases, often a question of law, but the quantity and extent of service or supply is generally for the jury. The liability of the husband is based on the implied agency of the wife to act for him in those matters which the dictates of humanity and society require that he should perform. The defense to this claim was not alone that the services were rendered without the father's direction and knowledge, but that the operation was not such a necessary as to make him liable therefor. On the trial below the service of the plaintiff was treated as that of a family physician. The employment was of a very different nature. The plaintiff was consulted as a surgeon and managed the case accordingly; and while the two offices are frequently performed by the same person, the evidence shows the distinctive differences in the management of cases requiring grave operations. It might be that the defendant would be liable for the usual and ordinary service of a physician and for the medicine furnished or prescribed,

and yet not be liable for the special and extraordinary services of a surgeon. The first are held to be necessaries but the second are not, nor, under the facts in this case, do we think should be so held.

The fourth, fifth, seventh, eighth and ninth assignments of error are sustained, the judgment is reversed and a venire facias de novo awarded.