## Commonwealth v. Cummerick

*John H. Evans, Jr.,* and *Martin E. Cusick,* for Commonwealth.

*W. Allen Dill* and *Donald E. Hittle,* for defendant.

ROWLEY, P. J., June 7, 1949.—This matter is before the court upon a motion by the Commonwealth to discharge a rule heretofore granted upon the Commonwealth to show cause why an order for support should not be reduced in amount.

On June 18, 1943, defendant, Michael R. Cummerick, and his wife entered into a separation agreement which provided that the court should enter an order directing defendant to pay to his wife, Anna M. Cummerick, the sum of $12.50 per week for the support

of their two minor children, Betty Ann and Shirley May, then aged 13 and 8 years, respectively.

On June 21, 1943, the court entered the order in pursuance of the agreement.

Subsequently, Anna Cummerick filed a petition averring that $12.50 per week was inadequate for the support of the minor children. At the hearing thereon, it appeared that Betty Ann Cummerick, then 18 years of age, was attending Youngstown College, and that Shirley May was then 13 years of age.

On October 4, 1948, the court entered an order directing defendant to pay the sum of $22.50 per week for the support of his two children.

On February 21, 1949, defendant presented his petition averring, inter alia:

"That Betty Anne Cummerick became 19 years of age on December 15, 1948. The said Betty Anne Cummerick has finished high school and is now in the sophomore class in Youngstown College, Youngstown, Ohio.

"That said Betty Anne Cummerick is physically and mentally capable of supporting herself and has in past years been gainfully employed during vacations. During the summer months of 1948 she was employed by the Sharon Steel Corporation, Sharon, Pa., at approximately $100 per month.

"That at the time of the latter order, petitioner was employed as a craneman at the Sharon Steel Corporation, with earnings then, and now, averaging $220 per month. Petitioner's only income is that received in wages from said employment with Sharon Steel."

The court granted a rule upon defendant's petition to show cause why the order of October 4, 1948, should not be vacated as to Betty Anne Cummerick. On March 4, 1949, the Commonwealth moved to discharge the rule.

At the hearing of October 4, 1948, upon which the existing order is predicated, it appeared that Betty

Anne Cummerick in a competition had won a scholarship in Youngstown College, which scholarship was awarded by defendant's employer. At the hearing, defendant pointed out that he was entitled to some credit for the award. We do not recall the particulars of his claim, but his participation in the matter was slight, perhaps only that his employment by the donor qualified his daughter to enter the contest.

Defendant's brief states two questions. We shall first consider the second one.

"Question 2: Where an order for support of a 19-year-old child is operative against a defendant, the effect of which is to pay said child support while attending college and to enable the child to refuse available employment, is the fact that defendant's employer provides a minor part of the total expense of said education sufficient legal reason to justify the continuance of such order?"

In elucidation of the point defendant cites Commonwealth ex rel. Binney v. Binney, 146 Pa. Superior Ct. 374, where that court held:

"The Act of June 24, 1939, P. L. 872, 18 P. S. 4733, affords no basis for a court to require appellant, at least under the conditions disclosed by the evidence in this case, to send to and maintain at college his nineteen-year-old son."

The question whether a father may be required to maintain his minor child in college has never been categorically answered by the courts. That point is somewhat bound up in the question, what are "necessities"?

The Act of June 13, 1836, P. L. 539, provided for the arrest of any man who shall desert his children, "leaving them a charge upon the district."

The court of quarter sessions was authorized to make an order upon defendant for the maintenance of such children.

The Act of 1836 seemed particularly concerned to relieve the poor district.

The Act of April 13, 1867, P. L. 78, provided for the arrest of a father who shall separate himself from his children or shall neglect to maintain them. This act authorized the court of quarter sessions to make an order "for the comfortable support and maintenance of the . . . children".

The Act of 1867 seems to have been inspired by humane motives rather than by economic considerations.

The Penal Code of June 24, 1939, P. L. 872, sec. 733, 18 PS §4733, under which the instant proceeding was brought, is substantially a reënactment of the Act of 1867, P. L. 78. The latest act provides that if a father separates himself from his children or neglects to maintain them, the quarter sessions court, after hearing, may "order the person against whom complaint has been made, *being of sufficient ability*, to pay such sum as said court shall think reasonable and proper for the *comfortable support and maintenance* of the said wife or children".

During an earlier period of our history, it was not uncommon for quarter sessions courts in Pennsylvania to vacate orders for support of a child when he attained the age of 16 years. This practice rested upon an assumption that a normal child of 16 years usually found employment.

The compulsory school attendance law of July 12, 1897, P. L. 248, required children between the ages of 8 and 16 years to attend school *70 percent* of the period school was in session but provided "That this act shall not apply to any child between the ages of thirteen and sixteen years that is regularly engaged in any useful employment".

The School Code of May 18, 1911, P. L. 309, as amended, required children between the ages of 8 and

16 years to attend school *continuously through the entire term*, with minor exceptions.

The Act of May 29, 1931, P. L. 243, as amended, extends the compulsory school age to 17 years.

The concern of the Commonwealth for the education of its children has long been indicated.

It seems to us that recent statutes adopt a broader view of the educational necessities of youth. Presumably, the legislature expresses by statutes the common judgment of the people.

In Commonwealth ex rel. O'Malley v. O'Malley, 105 Pa. Superior Ct. 232, the court observed: "There is no reason why the duties growing out of the relation of parent should be terminated at the child's becoming of age when such duty *in the forum of conscience still exists.*" (Italics supplied.)

Of course, due weight should be given to the desire and determination of a parent who, by reason of natural interest which he usually has in the welfare of his children and the intimate knowledge he possesses of the ability and disposition of his children, is in a position where he should be able to determine that which is for the benefit not only of the child but of society in which such child must have a part: Commonwealth ex rel. v. Nolan, 111 Pa. Superior Ct. 174. Where, however, the parent abandons his child, the court, upon the question of the extent of the child's education, will not concede to the parent the right to establish the limit of educational opportunities.

"In cases of this type, the Commonwealth is not only a nominal but a real party to the proceedings, vitally interested in the decision, and concerned that provision is made for the care, support, and maintenance of the wife and children who have been deserted by the husband and father. It is not for him to determine when and to what extent he will provide for them.

That is for the Court": Commonwealth ex rel. Slocum v. Slocum, 160 Pa. Superior Ct. 354.

More than half a century ago, large taxpayers applied to Judge McDermott, our predecessor, for an injunction to restrain a borough school board from employing a teacher of music. Petitioners said in effect that a common school training only was required by law, and that a common school training included reading, writing and some figuring, but not music. Happily for the generations which followed, Judge McDermott declined to adopt the narrow view of petitioners.

In Commonwealth v. George, 358 Pa. 118, the matter of a college training for a minor child was remotely involved. The Supreme Court held that defendant had adequately provided for his family, and vacated the order of the trial court. In its discussion, the Supreme Court said: "The arm of the court is not empowered to reach into the home and to determine the manner in which the earnings of a husband shall be expended."

Where a husband or father has not separated himself from his family nor failed to maintain them, the court must concede much to his judgment as to the standard of living he shall maintain, but where, as here, the parent abandons his prerogatives as head of the household, withdraws from the family and neglects to maintain his minor children, the court will not be bound by the opinion of the recalcitrant father in a proceeding to determine what is "reasonable and proper for the comfortable support and maintenance" of his children.

The opinion of the trial court in Commonwealth v. Gilmore, 97 Pa. Superior Ct. 303, approved by the Superior Court without comment, expresses a forward-looking view. The opinion declares:

"The State's interest in marriage rests upon a sound public policy, which is founded not only upon the regulation of the morals of the people but more

especially upon the State's basic concern in the rearing of children. In a republic where every adult citizen has a share in public affairs, it becomes essential for the preservation of the State and the happiness of the people, that the citizens be acquainted with public affairs and be intelligent and to that end be educated to the highest extent possible. This being so, it is highly proper that the law should, in the matter of the support of minors, adopt such a rule as will work to the benefit of the State and the public rather than the convenience of a particular individual."

When the Gilmore case was first before the Superior Court (95 Pa. Superior Ct. 557), that court declined to hold that when a child has attained an age exempting him from compulsory school attendance, an order for his maintenance should be revoked.

In Commonwealth v. Gilmore, supra, the court refused to vacate the order for support of a child then 17 years of age, in order to permit him to graduate two years later, declaring:

" 'Chancellor Kent's observation, 2 Com. 196, is not more elegant than just—that a parent who sends his son into the world uneducated and without skill in any art or science, does a great injury to mankind, as well as to his own family, for he defrauds the community of a useful citizen, and bequeaths to it a nuisance.' "

" 'The practical meaning of the term (necessaries) has always been in some measure relative, having reference as well to what may be termed conventional necessities of others in the same walk of life with the infant as to his own pecuniary condition and other circumstances.' "

" 'All of those things which are reasonably necessary to the comfort, health and education of the child suitable to his degree and station.' "

Some courts have distinguished between the obligation of a parent under a quasi-criminal statute and the

civil liability of the father for educational expenses incurred by his child. The law imposes liability upon the parent to support his children during minority. In our opinion, there is no sound basis for grafting upon this liability a qualification limiting it to the period during which the child is subject to the compulsory school attendance law.

No one will claim that a parent is obliged to maintain a child in idleness merely because the latter has not attained the age of 21 years. It is no more rational to claim that a father of substantial ability may require a minor child to abandon his formal education after he has pursued it long enough to relieve the parent of liability to prosecution for the child's nonattendance in school.

We are aware that in an earlier generation, many men with little or no formal education made substantial progress in industry and business. It must be realized, however, that our present-day life is more highly complicated. The automobile, aeroplane, radio and countless scientific advancements have created an intricate life to confront youth. We have progressed from the point where the liability of the parent was imposed primarily to relieve the poor district. We are now beginning to realize that the Commonwealth has a stake in a more advanced education for youth than the minimal requirements provided for all children regardless of the ability, prospects and progress of the child and irrespective of the resources of the parent and the family's station in life.

In Commonwealth ex rel. Binney v. Binney, 146 Pa. Superior Ct. 374, the Superior Court declared:

"But it is well known that there are worthy parents in all parts of the country, with means greater than this appellant has, who do not furnish their children with the financial assistance necessary for a college education. We cannot say that each has failed in his

legal duty to his child and to the state. To hold that the *circumstances of this father* require him to furnish his son with a college education would be an unwarranted conclusion. Hence in such a matter he is entitled to a measure of discretion, and must be allowed to exercise his own judgment. The Act of June 24, 1939, P. L. 872, 18 PS 4733, affords no basis for a court to require appellant, at least *under the conditions disclosed by the evidence in this case,* to send to and maintain at college his nineteen-year-old son. Com. ex rel. Gillen v. Gillen, 102 Pa. Superior Ct. 136." (Italics supplied.)

Defendant says that he does not oppose the attendance in college of his daughter and that he is willing to contribute to her maintenance there, but insists that his contribution be voluntary. We should be more impressed by defendant's claim were it not for the record of his previous failures to comply with the court's order.

On December 29, 1947, the court granted a rule to show cause why defendant should not be attached for failure to comply with the order of June 21, 1943. On September 7, 1948, a second rule for an attachment was granted and served upon defendant. The petition averred arrearages of $322.50, which antedated the daughter's enrollment in college. On September 27, 1948, an attachment was issued upon defendant's failure to appear and answer the rules. Both citations were for nonpayment of $12.50 per week as fixed by the order of June 21, 1943.

However, the purpose of the statute is the support and welfare of the child, not the punishment of the father, and the order should be for an amount justified by the reasonable present earning ability of the father: Commonwealth v. Cleary, 95 Pa. Superior Ct. 592.

The liability of a delinquent father for necessaries furnished his family is undoubted. But he is liable

only for such necessaries as are suitable to his situation and condition in life: Detwiler v. Bowers, 9 Pa. Superior Ct. 473. The word "necessaries" is a relative term. The son of a wealthy parent could doubtless subsist upon the quality and quantity of food, raiment and shelter that is provided for the child of an unskilled laborer, nevertheless, we believe it will be readily conceded that a more liberal allowance for support would be made in the former case.

Under the existing order defendant's daughter received approximately $11.25 per week. It is obvious that this amount covers no substantial part of her college expenses.

The foundation upon which an order for support of a child must rest is the right of the child to such maintenance as might reasonably be expected from a father in his financial situation: Jones v. Jones, 348 Pa. 411.

To oblige a father to educate his minor child, it is not necessary that the absolute necessities of the situation require the father to supply the means. If the child have a substantial estate the father, being of sufficient ability, is bound to defray the cost from his own funds: In re Harland's Accounts, 5 Rawle 323.

The foregoing discussion was not necessary to the determination of the question here presented, nevertheless, we believed the question of a parent's responsibility for the education of a minor child merited the consideration accorded it herein.

The Act of June 19, 1939, P. L. 440, 17 PS §263, provides:

"Any order heretofore or hereafter made by any court of this Commonwealth for the support of a wife, child or parent, may be altered, repealed, suspended, increased, or amended, and the said court may, at any time, remit, correct, or reduce the amount of any arrearages, as the case may warrant."

In Commonwealth ex rel. Crandall v. Crandall, 145 Pa. Superior Ct. 359, the court said:

"Orders in nonsupport cases are not regarded as final, inasmuch as they may be increased, reduced, or vacated where the financial condition of the parties changes, or where other proper reasons are shown. Com. ex rel. Barnes v. Barnes, 140 Pa. Superior Ct. 397, 399, 14 A. 2d 164. See, also, Act of June 19, 1939, P. L. 440, No. 250, §1, 17 PS §263. But the burden rested upon the appellant to show, by competent evidence, such changes in conditions or circumstances as would justify a vacation or modification of the original order of July 15, 1940. Com. ex rel. Snyder v. Snyder, 120 Pa. Superior Ct. 189, 192, 182 A. 62; Com. ex rel. Ritter v. Ritter, 91 Pa. Superior Ct. 563, 566. These changes must be permanent; temporary losses are insufficient. Com. ex rel. Berardino v. Berardino, 99 Pa. Superior Ct. 532, 534."

The foregoing authorities rest upon:

" '. . . the rule that what has been judicially determined shall not again be made the subject of controversy extends to every question in the proceeding which was legally cognizable and applies where a party had neglected the opportunity of trial or has failed to present his cause or defense in whole or in part under the mistaken belief that the matter would remain open and could be made the subject of another proceeding' ": Commonwealth v. Bednarek, 62 Pa. Superior Ct. 118.

Whatever question was properly involved in the former suit and might have been there raised and determined is conclusively settled by the decree: Taylor v. Cornelius, 60 Pa. 187.

"Orders of support are not final inasmuch as they may be increased, reduced, or vacated where the financial condition of the parties changes, or where other proper reasons are assigned, but the burden rested upon appellant to show by competent evidence such

permanent changes in conditions or circumstances as would justify a vacation or modification of the existing order": Commonwealth ex rel. Barnes v. Barnes, 151 Pa. Superior Ct. 202.

The petition for a rehearing and review of an order for support does not take the place of an appeal from that order.

In Commonwealth v. Schneiderman, 162 Pa. Superior Ct. 461, an order of support was entered against defendant on October 25, 1946. On December 5, 1946, defendant's petition for a rehearing was denied, and within six days defendant filed exceptions to the denial. Final disposition of the exceptions was made on October 2, 1947. From such disposition, defendant, on November 12, 1947, appealed to the Superior Court, which court quashed the appeal as too late, saying:

"The Act of May 11, 1927, P. L. 972, amending section 4 of the Act of May 19, 1897, P. L. 67, 12 PS §1136, provides:

" 'No appeal shall be allowed, in any case, from a sentence or order of any court of quarter sessions . . ., unless taken within forty-five days from the entry of the sentence or order.' Such a statutory provision is mandatory. Pittsburgh v. Ruffner, 134 Pa. Superior Ct. 192, 197.

"The petition for rehearing and review of the original order of the Court did not take the place of an appeal from that order. Com. ex rel. Isaacs v. Isaacs, 124 Pa. Superior Ct. 450.

"An order for support can be altered upon petition, if the circumstances, which existed when the application in the first instance was made, have materially and substantially changed; but such is not the situation presented or averred in appellant's petition."

In the recent case of Commonwealth ex rel. Gozzi v. Gozzi, 163 Pa. Superior Ct. 527, the court declares that after entry of an order for support defendant

"was entitled to have it reduced only upon a showing made in good faith, *that the circumstances existing when the original order was made had materially and substantially changed.*" (Italics by the Superior Court.)

Defendant urges that the court has inherent power to correct its erroneous application of the law, without regard to the limitation upon the right to appeal. All appeals involve the question whether the lower court correctly applied the law. If the trial court may permit a retrial at its election without limitation, then the rules regulating appeals would be wholly dissipated, and the rights of the prevailing party would be subject to overturn at the pleasure of the trial judge. Such a result would be wholly inconsistent with the principle of res judicata.

(It will be understood that we are not now considering judgments by confession or default. As to these, the court has broad powers to permit the judgment to be opened or stricken off.)

Of course, if a judgment is void for lack of jurisdiction of the parties or of the subject matter or, for other reasons, is a nullity, it may be attacked however great the passage of time: Haverford Township School District v. Herzog, 314 Pa. 161.

There has been no change in defendant's financial circumstances since the order under attack was entered. At the hearing which preceded that order, it appeared that defendant's daughter had passed the age of 18 years and was then in attendance at Youngstown College. The only altered circumstance urged in support of defendant's petition is the fact that the daughter has now passed the age of 19. Other circumstances being the same, we cannot distinguish between the obligation of a father to aid the education of an 18-year-old daughter and his responsibility for her after she has attained the age of 19.

In its practical application, the principle urged upon us by defendant amounts to this: A 19-year-old laggard stumbling through grade school could require the parent to maintain him but another child of the same age who, by reason of industry and proficiency, has been admitted to college, thereby forfeits all right to look to the father for any part of his maintenance.

No court has declared that a father must provide a college education for his child, nor has any court held that there is no such obligation under any circumstances. The entire matter depends upon the particular facts in each case.

The cases disclose a tendency to include within the term "support and maintenance" the idea of education. The law, apart from statute, has come to recognize that paternal duty involves, in addition to provision for physical needs, such instruction and education as may be necessary to fit the child reasonably to support itself and to be an element of strength, rather than one of weakness, in the social fabric of the state.

In Fitler v. Fitler, 33 Pa. 50, Mr. Justice Woodward said, by way of obiter:

"There is no duty more clear and imperative than that of a father to support his children during their minority. And though we have no statute enforcing it, except in case of pauperism, I hold it to be a legal obligation. He is absolutely bound to provide reasonably for their maintenance and education, even though they have property of their own; and if he neglect this duty, he may be sued for necessaries furnished, and schooling given, under just and reasonable circumstances."

*Order*

And now, June 7, 1949, this matter came on for argument upon defendant's rule upon the Commonwealth to show cause why the order of the court, dated

October 4, 1948, requiring defendant, Michael R. Cummerick, to contribute to the support of his daughter, Betty Anne Cummerick, should not be vacated, and the same was argued, whereupon, after due consideration, it is ordered, adjudged and decreed that said rule be discharged.