Commonwealth of Pa. ex rel. Cunningham *v.* Cunningham, Appellant.

Argued March 9, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldridge and Drew, JJ.

*Francis M. McAdams,* for appellant.

*Wm. T. Connor,* and with him *John R. K. Scott* and *Daniel J. Shern,* for appellee.

OPINION BY BALDRIGE, J., April 15, 1931:

Mrs. Ella M. Cunningham filed a petition for writ of habeas corpus for the custody of her four minor children. An answer was filed thereto by her husband and a hearing was had on June 26, 1930. On July 9, 1930, before the completion of taking the testimony in the habeas corpus proceeding, Mrs. Cunningham swore out a warrant, charging that her husband, on May 8, 1930, without reasonable cause, separated himself from her and their four children, and has since neglected to support them. At a hearing on July 11, 1930, it was mutually agreed by counsel representing the respective parties, that the testimony taken prior thereto under the habeas corpus proceeding would be considered as taken in the desertion and non-support action. None of the pleadings in the habeas corpus case was printed; according to our understanding of the record, that proceeding was abandoned. We might add, however, that habeas corpus does not lie where the wife has the actual custody of the children. Mrs. Cunningham did not seek an order for her own support, as she has an income of at least $30,000 a year from her individual estate, but asked the court to award a sufficient sum to maintain the children. The learned court below entered the following order:

"And Now, to wit, November eighth, A. D. 1930,

after a full consideration of the testimony in the above cause and taking into consideration the financial condition of both of the parents of the four children involved in the cause; the Court in awarding the children to the care and custody of their mother, makes an order of Seven Hundred and Fifty ($750.00) Dollars per month upon their father, Patrick J. Cunningham, for the support and maintenance of the said four children now in the custody of their mother, with the understanding that the children have access to their father whenever they desire to visit with him, as I understand from the proceedings that there is a very amicable feeling on the part of the children towards their father although they desire to reside and be in the custody of their mother. The order in this case for support is to date from November first, A. D. 1930.''

This prosecution was brought under the Act of April 13, 1867, P. L. 78, which is entitled: ''For the relief of wives and children deserted by their husbands and fathers within this Commonwealth.'' Section 1, with which we are now concerned, provides, ''That in addition to the remedies now provided by law, if any husband, or father, being within the limits of this Commonwealth, has, or hereafter shall, separate himself, from his wife, or from his children, or from wife and children, without reasonable cause, or shall neglect to maintain his wife, or children, it shall be lawful for any alderman, justice of the peace, or magistrate, of this Commonwealth,......to issue his warrant to the sheriff,'' etc.

It will be noted that jurisdiction is conferred upon the court to make an order for support in two classes of cases—(1) where a husband deserts his wife or children or both, without reasonable cause, and takes up his own abode elsewhere; (2) where a husband neglects to maintain his wife or children, although he may continue to reside in the same house: Carey v. Carey, 25

108

Pa. Superior Ct. 223. In the affidavit, under which the warrant of arrest was issued, Mrs. Cunningham confines her charge to the first class. The burden was, therefore, upon her to prove by satisfactory evidence that her husband separated himself, without reasonable cause, and has since neglected to maintain her and the children. We might add, parenthetically, that, under the uncontradicted testimony, Mr. Cunningham expended, annually, about twenty to twenty-five thousand dollars for maintaining his family, so that he could have hardly been brought within the second class.

A further reference to the testimony discloses that Mrs. Cunningham and the defendant were married in February, 1914, and lived together until May 8, 1930. Three girls and a boy, ranging from four to sixteen years of age, were born to this union. The members of this family all resided together in a large, modern, eighteen-room house, located near Fairmount Park, and known as 5201 Wynnefield Avenue, Philadelphia. On May 8, 1930, when Mr. Cunningham was in Atlantic City, where he had gone a day previous for a four-day visit, Mrs. Cunningham, without his knowledge, moved out of the homestead, taking the four children with her, and went to an apartment house in West Philadelphia, where she and the children remained until about the first of July, when they went to the Hotel St. Dennis in Atlantic City. Upon their return, the first part of September, they moved into a large house in Merion, Montgomery County, where they now reside. The defendant, upon his return home from Atlantic City, continued to occupy and maintain the homestead, and has manifested his readiness and willingness to welcome back his wife and children. Since Mrs. Cunningham and the children departed from their home, the defendant has spent a substantial sum in payment of all the bills sent to him

for indebtedness incurred on behalf of the children, and has expressed his intention and desire to continue to support his children. There was some controversy as to the defendant's financial resources, which were estimated by the relator to be very large. The defendant contends that his income has been materially reduced. In the past he enjoyed large receipts and he, undoubtedly, now has ample means to provide comfortably for, and maintain, his wife and children in the home from which they withdrew.

The testimony shows further that the husband and wife did not always live on agreeable terms; that at times their relations were so strained that they did not speak to one another for long periods of time. But there is no testimony of any personal abuse or cruelty toward his wife, and the relationship between the father and his children seems to have been not only agreeable, but affectionate. The nurse for the children, who has been in their employ for fourteen years, and who is now with the children, said that she had never observed any friction between these two people. It is true the husband went to Atlantic City without notifying his wife of his intention, but under the testimony he wrote her of his whereabouts the day after he left his home. The record is entirely barren of any evidence that would justify the conclusion that the defendant had separated himself from his wife and children, as contemplated by the statute. A temporary absence from home for a few days certainly does not imply such a "separation." No previous action was shown that pointed to any plan or preparation by Mr. Cunningham for a permanent departure from his home and family. Mrs. Cunningham's promptness in moving the day after her husband left could hardly be attributable to a belief on her part at that time that he had deserted her and the children. It would rather appear that she desired to take advantage of his temporary absence to leave him. She frankly admits that

she does not desire to, and will not, live with him. If she found it necessary to leave her husband by reason of his treatment of her, the burden was on her to establish that fact. If an effort was made to assume that responsibility, it was so faint as not to be recognizable. Undoubtedly, there was a lack of affection between this husband and wife, and it is true that at times there was no social intercourse between them, but that condition might have been due to the wife's attitude as well as to the husband's. There was nothing in Mr. Cunningham's conduct toward his wife and children that justified Mrs. Cunningham in capriciously, or selfishly, taking the children, breaking family ties, leaving her commodious home kept up at a large expense, and establishing another home to be maintained by her husband. Fortunately, the law does not encourage such actions, nor does it enforce such a financial burden on husbands, without sufficient cause; otherwise, many a man might be the victim of the whim or fancy of a dissatisfied or designing wife.

The appellant relies mainly for his legal position on Com. v. Stark, 97 Pa. Superior Ct. 41. In that case, the facts are dissimilar. It is distinguished from the case at bar in this important feature, that the court had already, in a separate and unappealed from decree, awarded the custody of the child to the mother, and the order made against the defendant was for the child's maintenance.

We are not unmindful of our ruling in the case of Com. v. Berardino, 97 Pa. Superior Ct. 380, which "is in effect habeas corpus (proceeding) at the relation of the mother to have the custody of the child transferred from the father to her." Judge GAWTHROP, in delivering that opinion, held that the county court of Allegheny County did not have general jurisdiction in habeas corpus proceedings, but that where the court has acquired jurisdiction in a matter relating to the

maintenance of a child, it may control the custody, if maintenance is actually involved in the proceeding.

If the wife in the case at bar had established the failure of the defendant to support and maintain the children, their best welfare might have become involved, but as the charge of desertion or any other legal dereliction upon the part of the husband was not proved, in our judgment, the court was without authority to award the custody of the children to the mother.

The order of the lower court awarding maintenance and custody of the children is hereby reversed.