## Dixon v. Dixon

*Horace A. Davenport,* for plaintiff.

FORREST, J., July 27, 1955.—This is an action in equity under the Act of May 23, 1907, P. L. 227, sec. 2, as amended, 48 PS §132, brought by a wife against her husband for an award of past and future maintenance and for the sale of his real estate to procure the payment thereof. In accordance with a special order of this court, service of the complaint was made by publication. No appearance or answer was filed.

On motion judgment was entered for want of an answer and, in accordance with Pa. R. C. P. rule 1511(*b*), the matter was placed on the equity trial list for the taking of testimony to assist in framing the decree.

From the testimony there are made the following

*Findings of Fact*

1. Plaintiff, Dorothy M. Dixon, and defendant, Earl B. Dixon, are husband and wife, having been married on January 4, 1944.

2. Immediately after their marriage the parties hereto lived and cohabited together at premises owned by defendant and situate at 400 Mount Pleasant Avenue, Ambler, more particularly bounded and described as follows:

"ALL THAT CERTAIN lot or piece of land with the buildings thereon erected Situate in the Township of Whitpain, County of Montgomery and State of Pennsylvania, being lots Nos. 1 and 2 on a certain plan of lots laid out by Metz and Weir, C. E. for the North Street Realty Company, said lots being bounded and described as one piece as follows:

"BEGINNING at a stake set at the intersection of the Westerly side of Township Line Road with the Northerly side of Mt. Pleasant Avenue, each 33' wide, thence by the Westerly side of Township Line Road North 45° 59' West 163.69' to a point in line of lot No. 4 on said plans; thence by the side of Lot No. 4 South 67° 37' West 81.29' to a point in Lot No. 3; thence South 29° 59' East 151.33' to the Northerly side of Mt. Pleasant Avenue; thence by the said side of said Avenue North 67° 37' East 126.82' to the place of beginning.

"UNDER and SUBJECT to certain restrictions of Record": Recorded in Deed Book no. 1809, page 107, etc.

3. Plaintiff continued to live and cohabit at said address until the present time.

4. Defendant willfully and maliciously and without reasonable cause deserted plaintiff in April 1951, and he has not lived with her since. His present whereabouts are unknown, although he is reportedly somewhere in or around Montreal, Canada.

5. Since April, 1951, defendant has neglected to contribute to the support of plaintiff, although he has been sufficiently able to do so.

6. Since April, 1951, to the present time plaintiff has supported and maintained herself out of her own earnings. Her expenditures for necessaries, including food, clothing, medicines, medical treatment and incidentals have averaged and will continue to average $80 per month.

7. In addition, since April, 1951, to the present time, in order to prevent mortgage foreclosure of said premises, 400 Mt. Pleasant Avenue, Ambler, plaintiff each month has paid $34.94 on a mortgage held by Ambler Building and Loan Association and $15.82 on a second mortgage held by the same association, or a total of $50.76 per month, aggregating $1,327.72 to the date of filing of the complaint.

8. In addition, since April, 1951, plaintiff has paid sums for taxes, fire insurance, and maintenance of the premises 400 Mt. Pleasant Avenue, Ambler, averaging $50 per month.

9. Before leaving plaintiff, defendant furnished her with $20 per week for the table for both of them.

10. Plaintiff has no children.

11. Defendant's last known occupation was truck driver.

12. Plaintiff is steadily employed at the rate of $5 per day.

13. Proceedings against the above described real estate are necessary for the suitable maintenance of plaintiff.

### Discussion

This is not an action in assumpsit for a debt, which would be barred by the Married Woman's Property Act of June 8, 1893, P. L. 344, sec. 3, as amended by the Act of March 27, 1913, P. L. 14, sec. 1, 48 PS §111, nor is it a proceeding to protect her separate property which would be permitted by that act. The authority for this suit is the Act of May 23, 1907, P. L. 227, sec. 2, as amended by the Act of April 27, 1909, P. L. 182, sec. 1(2), and the Act of July 21, 1913, P. L. 867, sec. 1, 48 PS §132. That act authorizes a proceeding, *in rem*, not *in personam*, and provides:

"Whenever any man has heretofore separated, or hereafter shall separate, himself from his wife, without reasonable cause, or whose whereabouts are unknown, and, being of sufficient ability, has neglected or refused or shall neglect or refuse to provide suitable maintenance for his said wife, proceedings may be had against any property, real or personal, of said husband, necessary for the suitable maintenance of the said wife; and the court may direct a seizure and sale . . . of sufficient of such estate as will provide the necessary funds for such maintenance. . . ."

Although the remedy furnished by that act might appear to be only prospective, and not retroactive, in nature, the court in Adler v. Adler, 171 Pa. Superior Ct. 508 (1952), decided that a deserted wife may maintain an action in assumpsit against her husband to recover moneys already expended by her out of her separate estate for support, maintenance and necessaries for herself and their children. The court stated at p. 510:

"Where, as here, a deserted wife has used or applied her own separate estate in the discharge of an obligation resting primarily on the husband, the law imposes a quasi-contractual relationship to reimburse the deserted wife for expenditures which she had

expended from her separate estate in providing herself with support in a manner in keeping with his financial circumstances and earning power."

Therefore, we take it that insofar as the right to recover for suitable maintenance which a husband has failed to furnish in the past and the right to obtain an order for maintenance in the future is concerned, plaintiff has a clear right in rem. See Flohr v. Flohr, 68 D. & C. 359 (1949). However, in the absence of personal service she has no right in personam for particular moneys advanced, whether such moneys were expended directly for her support and maintenance or indirectly for her benefit through the payment of mortgage interest and principal, taxes or fire insurance. Such outlays may be considered as evidence of payments for "suitable maintenance" for the wife. In no other respect are they material in this case. They cannot independently constitute the basis of our order or decree. Without question plaintiff appears to be the innocent and injured spouse. We hold no brief for defendant. However, in arriving at our conclusion as to the proper amount to be specified in our decree we have borne in mind that these proceedings are civil in nature and not criminal, that the purpose of an order of support is not to punish a defendant for misconduct toward his wife, but to secure such an allowance for her support as is reasonable, having in view the property, income and earning capacity of defendant and the condition in life of his wife, and that nothing in the nature of punitive damages may be allowed: Jones v. Jones et al., 348 Pa. 411 (1944).

"In determining the amount which should be decreed for support . . . all the attendant circumstances should be considered": DeAngelis v. DeAngelis, 34 Del. Co. 225, 228 (1946).

"The settled policy in these cases is that the amount awarded should not exceed one-third of the income from the property and labor of the husband": Com. v. Gilleland, 93 Pa. Superior Ct. 307, 309 (1928); Com. ex rel. Simmler v. Simmler, 134 Pa. Superior Ct. 339 (1938); Com. ex rel. Liuzzi v. Liuzzi, 142 Pa. Superior Ct. 239 (1940).

The evidence leaves the amount of defendant's income a matter of conjecture. However, it would appear that it probably does not exceed $90 per week and that, under the decisions, plaintiff is entitled to no more than $30 per week.

Finally, there is a question of procedure in the enforcement of plaintiff's right. Since this is a proceeding in rem the powers given to the court by the acts of assembly are limited. As stated in Erdner v. Erdner, 234 Pa. 500, 506 (1912), "the court had power to direct a sale or mortgage of so much of defendant's estate as might be necessary for the maintenance of the plaintiff, but before so doing it should first have determined what amount would be suitable, and, next, what property of the defendant should be taken for that purpose; then it could have decreed a sale or mortgage accordingly."

We have determined the amount necessary for plaintiff's maintenance and it appears that the only property which is available to be taken for such maintenance is the real estate described in the complaint in equity. In accordance with procedure followed in the similar case of Sutliff v. Sutliff, 24 Luz. 425 (1927), a trustee will be appointed and empowered to effectuate the sale of the real estate and the distribution of the proceeds thereof under the direction of the court.

### Conclusions of Law

1. Equity has jurisdiction.
2. Plaintiff is entitled to equitable relief.

3. Plaintiff is entitled to maintenance and support in the sum of $30 per week computed from May 1, 1951, the date of defendant's desertion, as well as present and future support from defendant.

4. A decree should be entered subjecting the above described real estate to a lien for the amount so chargeable to defendant for plaintiff's use, at the rate of $30 per week computed as aforesaid.

5. Payment of the aforesaid lien should be enforced by sale of the real estate by a trustee to be appointed by the court, and any balance then remaining in his hands should be paid by such trustee in installments of $30 per week until it is exhausted or until further order of the court.

### Decree Nisi

And now, July 27, 1955, it is ordered, adjudged and decreed:

1. The real estate described in paragraph no. 2 hereof is subject to a lien for maintenance and support of plaintiff in the sum of $30 per week computed from May 1, 1951, until the date of sale and conveyance thereof by the trustee herein appointed.

2. The trustee herein appointed shall seize and take possession of

"All That Certain lot or piece of land with the buildings thereon erected Situate in the Township of Whitpain, County of Montgomery and State of Pennsylvania, being lots Nos. 1 and 2 on a certain plan of lots laid out by Metz and Weir, C. E. for the North Street Realty Company, said lots being bounded and described as one piece as follows:

"BEGINNING at a stake set at the intersection of the Westerly side of Township Line Road with the Northerly side of Mt. Pleasant Avenue, each 33' wide; thence by the Westerly side of Township Line Road

North 45° 59′ West 163.69′ to a point in line of lot No. 4 on said plans; thence by the side of Lot No. 4 South 67° 37′ West 81.29′ to a point in Lot No. 3; thence South 29° 59′ East 151.33′ to the Northerly side of Mt. Pleasant Avenue; thence by the said side of said Avenue North 67° 37′ East 126.82′ to the place of beginning.

"UNDER and SUBJECT to certain restrictions of Record."

3. The trustee herein appointed shall expose said real estate for public sale after public notice and sell the same to the highest bidder and from the proceeds of the sale of the same the trustee shall pay whatever proper charges, debts and liens which may be of record against said real estate together with the expenses of said sale and the costs of this action, and from the balance thereof, if any, shall pay to plaintiff, Dorothy M. Dixon, wife of defendant, Earl B. Dixon, the sum of $30 per week computed from May 1, 1951. The first payment made by the trustee shall include all arrearages up to the first day of the month in which the sale shall be confirmed. Thereafter the weekly payments as aforesaid shall continue until the fund realized from the sale be exhausted by the payments by the trustee as aforesaid or until further order of this court.

Herbert C. Nelson, Esq., is hereby appointed trustee for the purpose of carrying out the directions of this decree; he to furnish bond in the sum of $8,000 with surety to be approved by the court, for the faithful performance of his duties.

The prothonotary shall give prompt notice of this adjudication to the parties. Unless exceptions are filed within 20 days after such notice, this decree nisi shall be entered as of course by the prothonotary as the final decree.