Jones *v.* Jones et al., Appellants.

Argued November 22, 1943. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*Charles F. C. Arensberg,* of *Patterson, Crawford, Arensberg & Dunn, Ella Graubart* and *George Y. Meyer,* for appellants.

*Oliver K. Eaton,* with him *Jason Richardson,* for appellee.

OPINION BY MR. JUSTICE LINN, January 3, 1944:

This is a desertion and non-support proceeding. The deserted wife filed this bill against her non-resident husband and others for maintenance out of his future interests in certain trust estates pursuant to the Act of May 23, 1907, P. L. 227, as amended, 48 PS sections 131 and 132.[1] The husband, residing in Buffalo, N. Y.,

---

[1] Section 1, as amended, provides: "If any man shall separate himself from his wife without reasonable cause, and, being of sufficient ability, shall neglect or refuse to provide suitable maintenance for his said wife, such wife shall be and is hereby empowered to bring her action, at law or in equity, against such husband for maintenance, in the court of common pleas of the county where the desertion occurred, or where she is domiciled; and the said court shall have power to entertain a bill in equity in such action, and shall make and enforce such orders and decrees as the equities of the case demand; and in such action, at law or in equity, the husband and wife shall be fully competent witnesses."

Section 2, as amended, provides: "Whenever any man has heretofore separated, or hereafter shall separate, himself from his wife,

received notice of the proceeding. He appeared specially pursuant to the Act of March 5, 1925, P. L. 23, 12 PS section 672, and challenged jurisdiction on the ground that he had no property in Pennsylvania, a jurisdictional requirement of the Act of 1907, supra. It appeared that he had vested interests in the trust estates liable to be divested if he died before his mother; his objection was therefore dismissed: *Jones v. Jones,* 344 Pa. 310, 25 A. 2d 327.

The defendants are the husband, his mother, Mrs. Dumble, the trustees under two testamentary trusts, the trustee under a trust inter vivos and the guardian of minor children. At the trial which began October 28, 1942, it appeared that when the suit was brought, Jones was a Lieutenant in the Navy Air Corps. He was then stationed at Jacksonville, Florida, "where he was in charge of 1700 flying cadets and was responsible for their preliminary training." The Soldiers' and Sailors' Civil Relief Act of 1940, c. 888, 54 Stat. 1178, 50 USCA section 510, was not applied. A decree was entered apparently intended to operate *in personam* and *in rem:* compare *Erdner v. Erdner,* 234 Pa. 500, 83 A. 420. The trustees appealed. When the oral argument of the appeal disclosed that the learned court below had not complied with the Act of Congress, we set aside the decree and remitted the record for compliance with the Act and for further hearing. On the return of the record,

without reasonable cause, or whose whereabouts are unknown, and, being of sufficient ability, has neglected or refused or shall neglect or refuse to provide suitable maintenance for his said wife, proceedings may be had against any property, real or personal, of said husband, necessary for the suitable maintenance of the said wife; and the court may direct a seizure and sale, or mortgage, of sufficient of such estate as will provide the necessary funds for such maintenance; and service upon the defendant shall be made in the manner provided in the act of General Assembly, entitled 'An act to authorize the execution of process in certain cases in equity, concerning property within the jurisdiction of the court, and on the defendants not resident or found therein,' approved the sixth day of April, one thousand eight hundred and fifty-nine."

the court appointed an attorney to represent Jones as required by the Act. In addition, Jones also authorized counsel to enter a general appearance for him. He filed an answer; additional testimony was taken. After supplementary hearing on June 30, 1943, and adjudication, the court made the following decree:

"And Now, to-wit, September 17, 1943, the exceptions are overruled, and it is ordered, adjudged and decreed that there shall be paid to plaintiff for maintenance from her husband's said property, until further order of this court, the sum of Five Hundred ($500.00) Dollars per month from the date of this order.

"It is further ordered that the defendant, Thomas Mifflin Jones III, pay to plaintiff for maintenance and support, from October 28, 1942, to date, the sum of $4,250.00 and in default thereof that the aforesaid sum be paid by the Trustees.

"Proper proceedings against said property are directed to be had for the purpose of carrying out this decree, and the Union National Bank of Pittsburgh is hereby appointed Trustee to carry out this decree; and it is ordered [and] directed that said Trustee

"(1) Seize all the right, title and interest of Thomas Mifflin Jones III, of, in and to the said three trusts in the hands of The Peoples-Pittsburgh Trust Company, Trustee of the Brown trust; Fidelity Trust Company, Trustee of the King trust; and Fidelity Trust Company, Trustee under the Dumble trust, being the trusts hereinbefore described by publicly proclaiming to the President or Trust Officer of each of said Trustees the fact of such seizure, and by reading to each of said persons this decree, and further notifying each of them in writing, together with a copy of this decree, of such seizure.

"(2) Said property of said Thomas Mifflin Jones III, shall thereupon be held and administered by the Trustee hereinbefore appointed, for the purpose of providing for the suitable maintenance of the plaintiff as herein ordered, adjudged and decreed,

"(3) Said Trustee shall thereupon separately value and appraise the said property so seized, and report to this court to the end that appropriate order of court may be made directing the sale thereof or of sufficient of said property and estate as will provide the necessary funds for the maintenance hereby decreed.

"(4) The Trustee shall promptly notify Thomas Mifflin Jones III, of said seizure and furnish him with a copy of this decree.

"(5) Jurisdiction of this cause is retained by the court for the purpose of further proceedings and orders." The entire record was then returned to this court for review as directed and the case was argued on November 22, 1943.

We all agree that the evidence does not support the decree and that the amount awarded must be reduced to conform to the evidence; that the order for execution against the future interests must be reversed as inconsistent, in the circumstances disclosed by the record, with the rights conferred on the defendant by the Soldiers' and Sailors' Civil Relief Act.

We must review the record in the light of the statutes and settled rules applicable to orders for support. The measure of the court's discretion has been developed in cases applying the Act of April 13, 1867, P. L. 78,[2] as amended, 18 PS section 4733, and the Act of 1907, referred to above, as amended.

A recent comprehensive statement of these rules appears in *Commonwealth ex rel. Fort v. Fort*, 124 Pa. Superior Ct. 151, 152-153, 188 A. 416, in which President Judge KELLER said: "(1) The purpose of an order of support, under the Act of April 13, 1867, P. L. 78, and its amendments, is not to punish the respondent for his

---

[2] The Act of 1867, as amended, provides that "The said court, after hearing in a summary proceeding, may order the person against whom complaint has been made, being of sufficient ability, to pay such sum as said court shall think reasonable and proper for the comfortable support and maintenance of the said wife or children, or both . . ."

conduct, or misconduct, towards his wife and family, but is to secure such an allowance for their support as is reasonable having in view the property, income and earning capacity of the respondent and the condition in life of the family: *Com. ex rel. v. Sherritt,* 83 Pa. Superior Ct. 301, 303; *Com. v. Leonard,* 93 Pa. Superior Ct. 21, 23; *Com. v. Gilleland,* 93 Pa. Superior Ct. 307, 309; *Com. v. Cleary,* 95 Pa. Superior Ct. 592, 595; *Com. v. McClelland,* 109 Pa. Superior Ct. 211, 213, 167 A. 367. 'The foundation on which the judgment of the court must rest is the right of the wife to such support from her husband as she might reasonably expect from one in his financial situation': *Com. v. Gilleland,* supra, p. 309. The fact that for some years prior to these proceedings the respondent's mode of living was on a scale far beyond his means, and in consequence thereof he wasted and squandered a large part of his capital, did not warrant the court, by way of reprisal, to make an order that necessitated further depletion of the principal and perhaps its total exhaustion. While the orgy of spending lasted, the wife shared to some extent in the results; not as fully, no doubt, as the respondent; but that scale of living can no longer be maintained, and the order of support for the wife can rest on no such fictitious basis.

"(2) This leads us to the second ruling of this court which was disregarded in the order, viz., the order must be based on the respondent's property, income and earning ability *at the time of the hearing,* not on what they may have been in the past: *Com. ex rel. v. Kramer,* 80 Pa. Superior Ct. 210, 212; *Com. v. Leonard,* supra, p. 27; *Com. v. Cleary,* supra, p. 594; *Com. v. Knobloch,* 89 Pa. Superior Ct. 216." More recently, in *Commonwealth ex rel. Crandall v. Crandall,* 145 Pa. Superior Ct. 359, 363, 21 A. 2d 236, Judge RHODES said, "In considering the sufficient ability of the husband to pay, not only the actual amount shown to have been received, but also the attendant circumstances, must be considered."

We come, then, to a consideration of the attending circumstances. The parties were married January 7, 1922; they have three children, the first born December 20, 1922; the second November 14, 1925, and the third January 12, 1933. The two older children are now in the armed forces of the United States; the youngest lives with the plaintiff. The husband separated himself from his wife without reasonable cause May 1, 1934, in Allegheny County, Pennsylvania.

In an affidavit filed in the case July 23, 1943, defendant deposed: "3. At the present time, I am a Lieutenant Commander in the United States Navy with present status 'Naval Aviator without immediate flight duty.' My status may be changed at any time by my Commanding Officer to flight duty. As part of my duties I am frequently assigned as Operations Duty Officer and could be ordered to fly in any emergency while on such duty.

"4. I am required frequently, in the line of duty, to travel by United States Naval Aircraft from one Naval Air Station to another, such as from St. Louis, Missouri, to Memphis, Tennessee, or Kansas City, Kansas, or Chicago, Illinois, or Bunker Hill, Indiana. On such flights, in time of emergency, I am qualified to take over as relief pilot on planes up to and including Twin Engine Light Bombers.

"5. I have requested sea or combat duty and I am expecting such assignment.

"6. My base pay at present is $250.00 per month. My present additional allowance is $168.00 per month. This is subject to change, depending upon any new assignment."

He enlisted in the Navy Air Corps shortly before Pearl Harbor with the rank of Lieutenant. In his answer, he stated, "4. I admit that I used to drink too much and that it seriously affected my physical health but I have overcome this failing and I have regained my physical health, and I believe that when I get out of the service I shall be fit and able to earn con-

siderable sums of money and considerably more than my income as a Naval officer. Over a period of years from 1922 to 1934 I consistently earned from $6,000.00 to $12,000 annually. After 1934 my trouble was not that I could not earn enough money but that I did not keep any position long enough to do so."

In May, 1934, when the parties separated, the husband gave the plaintiff all the property he had, excepting his interest in the trusts; between that time and the end of 1942, she realized from it the sum of $31,353.23. During the same period or part of it, Mrs. Dumble, the husband's mother, gave to the plaintiff a total of $43,-991.86. During a large part of the period, she also received from her husband's mother the sum of $250. per month up to the time of the first hearing in October, 1942. In addition, the plaintiff received $5,000 on October 7, 1941, for the support and education of the children from September 1941, to September, 1942, the proceeds of a note made by defendant, Jones, and endorsed by the Union Trust Company, guardian of the minors. The interest of Jones in the trusts as well as the interests of the minors were pledged as collateral. Another note in the sum of $2,068.42 was executed to raise money to purchase life insurance on the lives of the three children, the insurance being pledged as security for the loan. September 14, 1942, a similar transaction was had for the education of the two younger boys in the amount of $3,-650.00. From the time of the separation to the time of the trial, October, 1942, plaintiff had received all of her husband's property (except his interest in the trusts) and the additional sums specified; in all, there was paid to her or for her account about $90,000.

After Jones deserted his wife in 1934, he went through the form of obtaining a divorce from her in Mexico and married a woman with whom he has since been living at various places outside Pennsylvania.

Jones has an interest in two testamentary trusts and one trust inter vivos, the aggregate of the trust property

being much over a million dollars. These interests will be divested if he dies before his mother dies. He appears now to be about 46 and his mother about 66 years of age.

As the proper exercise of discretion in support cases must be reviewed in the light of the attending circumstances, one naturally inquires whether the record discloses why defendant's mother, after giving to the plaintiff, subsequent to the separation, the large sum mentioned above, should have withdrawn her bounty. There was testimony on the subject. Mrs. Dumble was asked, "Q. How about her [plaintiff's] attitude toward you? A. Of late years it was always inimical, she was always demanding more money and running overdue accounts, unpaid bills. It was impossible for me to keep her supplied with money, until finally I came to the end, after repeated warnings by letter. I asked her please to do certain things that anybody would ask, to send me receipted bills, and to give me estimates of things that had to be done, and she didn't see fit to do that. Instead of trying to collaborate she fought me the entire time. She tried always to force me to give her more money. Q. To what extent did she try to force you to give her more money? A. In many ways. On one occasion I remember quite well, she told me it was up to me, and my duty, to give her $10,000 a year, and she intended to make me do so; and when I said no, I wouldn't do it, she threw herself on the floor and screamed, and threatened 'I will make you give me $10,000 a year.' Q. Did she do anything to carry out that threat? A. Yes; she brought suit twice.[3] Q. You say she did bring suit? A. Well, this same suit, I will say twice. I knew she employed Mr. Patterson to try to force me to give her more money for herself and the children, when I stopped the allowance. I warned her repeatedly if she didn't do certain things I will stop it; and I don't think she believed me. Q. Prior to the beginning of this suit, did I understand you to say she employed counsel? A. Yes, she did."

---

[3] There is no evidence of any other suit than this.

Plaintiff's attention was called to this testimony as follows: "Q. Mrs. Jones, prior to the institution of this present lawsuit did you ever threaten to sue Mrs. Dumble? A. I went for advice, to Mr. Patterson. Q. Was that in reference to a suit against her or your husband? A. Against my husband. Q. Did you ever at any time threaten to sue her? A. No. Q. She charges in her testimony that you have a violent temper, a violent disposition, and that it was impossible for your husband to get along with you. Is that correct? A. Speaking for myself, I would say it is false." The fact, however, is that Mrs. Dumble was made a party defendant to this suit, though in the end, no decree against her was made. On October 26, 1942, Mrs. Dumble instructed her agent "to cease payment of any money to Katherine or to Tom, or Dolores his wife. . . ."

Jones's only regular income at the time of argument was his salary and allowance as Lieutenant Commander. The total of both is $418.00 per month; before his promotion to his present rank he received $310 per month.

For a reason to be stated presently his future interests should not at this time be taken in execution and, we must assume for present purposes that defendant will comply with the order to be made and that it will not be necessary to take proceedings to enforce the order. We shall therefore consider what amount he should be ordered to pay in the light of the rules mentioned above.

The federal government has determined the salary of a Lieutenant Commander in the Navy; the implication is that the officer must maintain himself and family on the salary and allowance. If an officer has private means entitling his family to maintain an establishment requiring greater expenditure than his government pay will support, he should of course supply the difference, but defendant has at present no other income from which to make any such additional provision. The legal question then is, How much of what he receives do the "equities

of the case demand" (in the words of the statute) that the court should order him to contribute for his wife and their ten-year-old son?

Obviously, in the circumstances, the order of the court awarding $500 a month cannot be sustained. We all agree that $200 out of his pay and allowance of $418 will comply with the rules governing the exercise of discretion in such cases. The order shall be effective from November 14, 1942, the date of the decree first appealed from: *Keller v. Commonwealth,* 71 Pa. 413; *Commonwealth ex rel. Herman v. Herman,* 97 Pa. Superior Ct. 453, 457.

The portion of the decree directing execution against defendant's interests in the trust estates is an abuse of that discretionary action required by the Soldiers' and Sailors' Civil Relief Act, Act of October 17, 1940, c. 888, 54 Stat. 1181, 50 USCA 521, 523, sections 201 and 203 of which are as follows:

(201) "At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in this Act, unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service."

(203) "In any action or proceeding commenced in any court against a person in military service, before or during the period of such service, or within sixty days thereafter, the court may, in its discretion, on its own motion, or on application to it by such person or some person on his behalf shall, unless in the opinion of the court the ability of the defendant to comply with the judgment or order entered or sought is not materially affected by reason of his military service.

"(a) Stay the execution of any judgment or order entered against such person, as provided in this Act; and

"(b) Vacate or stay any attachment or garnishment of property, money, or debts in the hands of another, whether before or after judgment as provided in this Act."

The hazardous risks of aviation are common knowledge. The difficulties of marketing future interests, not certain of enjoyment such as defendant's are equally well known. The forced sale might be disastrous, not only to him but to plaintiff and their children. It is well known that purchasers of, or lenders on the security of, such interests require life insurance as collateral security. Even if Jones could get temporary leave for the purpose of looking after the sale or pledge of his interests, the duties of his Naval service would prevent furnishing standard life insurance as security; he could only furnish policies restricted in consequence of his hazardous occupation. At the present time Commander Jones, as well as his wife and children, should not be subjected to risks of almost certain loss incident to the execution proposed by the decree. We must assume that he will comply with the order because counsel will doubtless advise him that default may be followed by supplementary proceedings ultimately resulting in execution against his interests in the trusts. Compare *Boone v. Lightner et al.,* 319 U.S. 561.

Support orders may from time to time be altered, suspended, increased or amended as circumstances require: Act of June 19, 1939, P. L. 440, No. 250, section 1, 17 PS section 263.

The decree is reversed except that the amount of the order is reduced to $200 a month, effective from November 14, 1942, costs to be paid by defendant, Jones, security to be entered in the sum of $3,000, with surety to be approved by the court, for compliance with order and payment of costs.