Commonwealth *v.* George, Appellant.

Argued November 24, 1947. Before MAXEY, C. J., LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*William M. Kahanowitz,* with him *Edgar T. Hammer,* for appellant.

*Fred B. Trescher,* with him *Rabe F. Marsh, Jr.,* Assistant District Attorney and *Kunkle, Trescher & Snyder,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, January 5, 1948:

Paul H. George, appellant, was arrested on information by his wife, pursuant to section 733 of the Act of 1939, P. L. 872, 18 PS section 4733.[1] After a hearing in the Court of Quarter Sessions of Westmoreland County, an order was entered directing appellant to pay $300 per month to the wife for the support of herself and two minor children. George appealed to the Superior Court contending that the evidence was legally insufficient to sustain a finding that he "neglects to maintain his wife or children." The order was affirmed by the Superior Court which was evenly divided. See *Commonwealth v. George,* 160 Pa. Superior Ct. 574, 52 A. 2d 664. This Court allowed an appeal and di-

---

[1] "If any husband, or father, being within the limits of this Commonwealth, separates himself from his wife or from his children, or from wife and children, without reasonable cause, or neglects to maintain his wife or children, any magistrate, upon information made before him under oath or affirmation, by his wife or children, or either of them, or by any person, may issue his warrant for the arrest of the person against whom the information shall have been made, and bind him over, with one sufficient surety, to appear at the court of quarter sessions or other court having jurisdiction, there to answer the said charge of desertion"

rected the Court of Quarter Sessions to file an opinion pursuant to Rule 58 of this Court....

Kathryn K. George, prosecutrix, and appellant were married September 23, 1915, and have lived, and are now living, in the same home with four of the five children born of the marriage. The youngest of the children at the date of the hearing was fifteen years. Two of the children are attending school and the oldest is married and living elsewhere. George purchased the home in which the parties have been living for the past several years for $30,000. He has paid for utility services, repairs, fire insurance, interest on a mortgage and other indebtedness owed by him totaling $23,960, carries at least $35,000 life insurance and has expended approximately $1,700 per year for necessaries of life and for clothing for the wife and children.

The Commonwealth's evidence tended to establish that George remained away from home upon numerous occasions during which time he would become intoxicated.[2] He stopped credit at one small store, informing the proprietor that he would not be responsible for articles purchased by the wife; that his contributions to the children were small and only given after continued requests; that he believed he, rather than his wife, should control the expenditure of funds; that she received gifts from her mother which she applied to purchases in behalf of the children; that he insists that purchases be made through Kroger's Store; that he objects to her joining a country club; that he refused to permit medical benefits to the children; that he would not pay bills promptly; and, that $300 a month would

---

[2] "A. He was away eighteen days out of September—he got drinking eighteen days—and three weeks ago he was away from Monday until Monday. He was home maybe to sleep on the porch at night, or maybe indoors on the davenport at night. He was eating two meals and getting the stuff outside the mornings he was not there. He might have brought some groceries but he would not. We have a little store in the neighborhood. He closed the account": Notes of testimony, p. 16A.

probably enable prosecutrix to live reasonably and provide for necessaries for herself and family.

On cross-examination, the prosecutrix wife stated "we live very nice." She acknowledged that they had maid service three days a week, that he had no objections to her having guests in the home and her serving whatever she pleased; that he insisted upon purchasing at Kroger's because his income is partially dependent upon the amount of business done in that store; that Kroger's is only a ten-minute trip from her home; and, that ultimately he paid the outstanding bills.

The approximate income of defendant, George, is $13,000. To secure an indebtedness of $15,000 to the Barclay-Westmoreland Bank, he has a mortgage on the home, and to secure $8,960 to the First National Bank he has pledged considerable stock. The main portion of his income is derived through the Hackey Estate which includes income from Kroger's store, based on a percentage of business done, for which reason George insisted his wife purchase from that store. He contends that the wife has continually run up store bills and has no regard for the value of money, and that he has been attempting to pay all outstanding bills and would do so if given a chance. He has reduced the mortgage $3,000 in 1946 and intends to pay it off as soon as possible. Appellant's estimated income and disbursements were not challenged and, without including an item for income taxes, revealed expenditures of $15,469.66 against an income of $13,109.78.

The main source of complaint, as shown by the testimony of the prosecutrix wife, was that appellant too strictly controlled the expenditure of his income. In answer to a question by the court whether she was asking for money to take care of items of food and clothing for herself and children and spending money for herself and the children, she replied: "Definitely. I think it is up to me to handle it without having to go to him and ask for fifty cents. I think I should have the money.

I think it is my obligation to pay." On cross-examination, she admitted that he provided well for her and that they lived in a fine home. In answer to the question: "You have had food, groceries, meats, butter eggs?" she stated, "Yes; we live very nice." She admitted that he provided maid service for her and that he never prevented her from inviting guests to the home and serving whatever she desired. In answer to the question, "Your only complaint is that you feel he doesn't give you enough money to handle yourself?" she stated, "I would like to have money for when I need anything I can go and get it." She complained that the bills were not paid promptly, not that they were not paid; that he would give money directly to the children instead of to her so that she could give it to them; that he differed with her as to the necessities for certain dental expenditures; that she used $500 given to her as a gift by her mother to pay off certain charges which she had made in the name of one of the children; that appellant insisted too strenuously upon installment buying; and, that he objected to her joining a country club.

This record establishes that appellant has provided adequate shelter, food, clothing and reasonable medical attention. It presents conflicting concepts of family financial management. Prosecutrix does not suggest that appellant cease his present performance but desires to secure in addition thereto a monthly allowance for herself of $300. Her charges of "neglect to maintain" are general and their weight greatly lessened by her testimony in cross-examination. That the wife is not receiving that degree of control over her husband's income to which she feels entitled does not establish "neglect" within the meaning of the law.

Section 733 of the Criminal Code, supra, is to be distinguished from Section 731, 18 PS section 4731, in that the purpose of the latter is punishment for failure to support a wife or children, whereas the former, with which we are here concerned, was not to punish the

husband, but to secure reasonable allowance for support of the wife and family consonant with the husband's property, income, earning capacity, and the family's condition in life: *Jones v. Jones,* 348 Pa. 411, 415-416, 35 A. 2d 270; *Commonwealth ex rel. Barnes v. Barnes,* 151 Pa. Superior Ct. 202, 30 A. 2d 437; *Commonwealth ex rel. Martocello v. Martocello,* 148 Pa. Superior Ct. 40, 46, 24 A. 2d 712; *Commonwealth ex rel. Binney v. Binney,* 146 Pa. Superior Ct. 374, 379, 22 A. 2d 598. The instant case concerns only Section 733 and it is the function of appellate courts to determine whether the evidence adduced establishes the necessary prerequisite required by the statute for the entry of an order of support—neglect to maintain. The record in the instant case does not establish such neglect and the order must be vacated.

The arm of the court is not empowered to reach into the home and to determine the manner in which the earnings of a husband shall be expended where he has neither deserted his wife without cause nor neglected to support her and their children. In the absence of evidence legally sufficient to support a finding of either essentials the court is without power to enter an order upon the husband directing payment to the wife of any amount. The statute was never intended to constitute a court a sounding board for domestic financial disagreements, nor a board of arbitration to determine the extent to which a husband is required to recognize the budget suggested by the wife or her demands for control over the purse strings. The legislature intended Section 733, and prior statutes from which it was derived, to provide the method by which a wife who has been wrongfully deserted by the husband or who has been deprived of support by the neglect of the husband, could seek judicial assistance in securing a reasonable allowance for the support of herself and family: *Commonwealth ex rel. Cunningham v. Cunningham,* 102 Pa. Superior Ct. 104, 107, 156 A. 551. In such circumstances, the court is

vested with broad discretionary powers to enter an appropriate award having taken into consideration the husband's property, income, earning capacity, and the family's station in society: *Jones v. Jones,* supra.

Under the circumstances of this case, the Court of Quarter Sessions was without power to enter the order appealed from. We are not now required to determine the power of a court to enter an order where, although the parties reside under the same roof, the husband neglects or refuses to provide food, clothing and reasonable medical attention to his wife and family. We decide only that where, as here, the husband provides a home, food, clothing and reasonable medical attention, he cannot be directed to pay a given stipend to the wife so that she may have it available for her own personal disposition. The method whereby a husband secures to his wife and family the necessities of life is not a proper subject for judicial consideration and determination in the absence of proof of desertion without cause or neglect to maintain.

The order of the Superior Court is reversed and the order and decree of the Court of Quarter Sessions of Westmoreland County is vacated. Costs to be paid by appellant.