## Commonwealth ex rel. Hamilton *v.* Hamilton, Appellant.

Argued June 11, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Frederick G. McGavin,* with him *McGavin, DeSantis & Koch,* for appellant.

*John W. Biehl,* for appellee.

OPINION BY ERVIN, J., September 13, 1962:

James O. Hamilton appealed from an order of support entered by the court below in favor of his wife, Barbara B. Hamilton, and three children, aged 16, 14 and 11.

At the time of the hearing the parties had been married for more than 17 years. The entire family is living together in a common household at 936 Sunnyside Avenue, Wyomissing, Berks County, Pennsylvania, the home being of a value of thirty to thirty-five thousand dollars.

Judge ALBERT S. READINGER expended a considerable amount of time in courteously hearing the testimony which was presented in this case. The order which he made was extremely fair but after reading all of the record we are of the opinion that no order should have been made.

For most of the years of this marriage and prior to December 1961 the management of the household and the payment of bills was under the exclusive control of the wife. The husband, for the period from January 1, 1961 through November 1961, made available to appellee various sums of money totalling $7,940.80 by deposits in a joint bank account for the purpose of maintaining the family. Sometime in November 1961 the wife decided that she no longer wanted to handle the household finances. She testified as follows: "Q. If we went back to the arrangements in effect prior to the end of November, 1961, where you had access to all funds with the exception of income from 927 and 929 Penn Ave., and all dividends from A. T. & T., subject to paying expenses which you were expected to pay, would that be a satisfactory arrangement in lieu of $127 a week? A. No, sir. Q. In other words, if your husband is perfectly willing to turn over his income to you as prior to November, 1961, with the exception of 927 and 929 Penn Ave., that would not be satisfactory? A. That's right. That's how this started in the first place. I told him I couldn't get along on it. I asked him to do it. He refused. Q. Isn't that what he is attempting to do now? A. I don't know. I couldn't manage on this particular amount of money as he agreed. Q. Wasn't that income supplemented by loans from the bank? A. Yes, there were 2 loans. Q. How much were they? A. I believe the first one was $800, $600 of which went to the Internal Revenue Service. Q. What about the other $200? A. That went into the joint checking account. I have this listed under other income. The

other was a loan for $900, and with that $850 went toward the purchase of a used car and $50 I added to the income again. Q. When was that loan made? A. That was about the first of August."

In view of the wife's decision the husband took over the job of handling the finances of the family. On December 15, 1961 a warrant was issued by a magistrate for the arrest of the husband for failure to support his family. This was only several weeks after the husband had assumed control of the funds and before he had a real opportunity to prepare a budget and to set up a plan whereby this family could live within its income. When the husband took over he found that debts had been incurred of approximately $1,300.00. These debts included such items as water rent, gas, electricity, life insurance premiums, interest on joint loan to Reading Trust Company, telephone, interest on joint loan to Marks, medical bills, Wyomissing Institute for dancing, art and music lessons, hospital, private club, department stores and property insurance, many of which had to be paid promptly because the utility companies had given notice that the service would be terminated if payment was not made. By January 30, 1962 the husband had paid on account of these bills the sum of $825.27. In December 1961 the husband purchased food from lists furnished by the wife. He testified that he bought in large quantities in order to save money, purchasing at Cacoosing Farm, Black Angus beef, twenty-four to twenty-five dollars a week, and in addition to this milk at $5.00 per week; that he provided money for the children's lunches of $5.00 per week and that he purchased soap powders, paper articles, hand lotions and sundry items.

We do not intend to give the complete financial picture of this family but we agree with what the court below said in its opinion: ". . . that a detailed analysis of this family's financial picture . . . would serve no

useful purpose, as its complications almost defy analysis and can only be understood by a complete review of the testimony." We also agree with that part of Judge READINGER'S opinion where he said: "The picture painted by the testimony impels one to the inescapable conclusion that for the past several years these parties have been living 'beyond their means' . . . ." and also that part of his opinion where he said in reference to the wife: "Obviously, her head was 'in the clouds' in her estimate of the manner in which she and her family could afford to live." On numerous occasions the husband endeavored to get his wife to set up a budget so that the parties could live more realistically within his income. This she always refused to do.

We have carefully read the entire record and are convinced that it will require a strong hand to administer a carefully prepared budget so that this family can begin to live within its income. This man has for many years been an employee of Bell Laboratories at Lauderdale, Pennsylvania, and has a salary of $970.00 per month. He testified that his net salary after various deductions for taxes, hospital insurance, life insurance, etc., was $785.83 per month. Certainly the family should be able to live upon this income. It appears to us, however, that certain changes will have to be made in the life of the family. For example, they have two automobiles, one for the husband and one for the wife. It may well be that one automobile is all that they can afford. The wife had been going to a psychiatrist for a weekly visit for which she paid $20.00. The husband did not think this was necessary. While we are not endeavoring to dictate in such a matter, we do believe that the parties should give careful consideration to the question of whether all of these visits are necessary. The money from the weekly visits to the psychiatrist and the money to purchase and maintain an automobile might well be used for necessities. Certainly the

husband did not desert his family and we are convinced that he was furnishing substantially all of his income for the support of his family. The wife would still be handling the financial affairs of this family had she not voluntarily relinquished the job. If there is any desertion in this family, she is the guilty one. Not only is the husband obliged to be the breadwinner but he now has the additional job of running the financial affairs of this family.

What Judge (later President Judge) KELLER said in *Com. v. Smith*, 117 Pa. Superior Ct. 318, 322, 178 A. 335, is applicable to this case: "We are of opinion that in view of his earnings and having regard to the sufficiency of his ability to pay, which the Act of 1867 directs must be considered, the defendant was, when the complaint was entered against him, reasonably maintaining his children according to his circumstances and ability; and that the court below exceeded its proper legal discretion in ordering him to make a larger payment for the support of the children, enter security to pay the same, pay the costs and stand committed until such costs were paid and such security given. When a man is voluntarily contributing a reasonable sum, in proportion to his earnings and ability to pay, for the support of his children, he should not be harassed by proceedings, requiring the payment of costs, and the entry of security, with commitment to jail if he fails to pay such costs or enter security. It is time enough to institute such proceedings when he fails to keep up the payments he is voluntarily making, if reasonable in amount, considering his earnings and ability to pay."

In *Com. v. George*, 358 Pa. 118, 123, 56 A. 2d 228, our Supreme Court said: "The arm of the court is not empowered to reach into the home and to determine the manner in which the earnings of a husband shall be expended where he has neither deserted his wife

without cause nor neglected to support her and their children. In the absence of evidence legally sufficient to support a finding of either essentials the court is without power to enter an order upon the husband directing payment to the wife of any amount."

We believe that this husband should be given a reasonable period of time in which to get the financial affairs of his family in order.

Order reversed.

Concurring Opinion by Woodside, J.:

I fear that it might be gleaned from the opinion of the majority that it is the court's business to look into the family pocketbook and bill file whenever requested by the wife to do so, and that we have set aside the support order here because, after examining the family budget, we concluded that the husband was handling the money satisfactorily. The law does not contemplate that the courts should attempt to solve the financial difficulties of a husband and wife who are living together.

Although the majority has advanced sufficient reasons for reversing the order of support after it examined the family financial problems, I believe the order should be set aside solely on the more basic ground that the court should not attempt to allocate the husband's pay check to the family bills when the husband and wife are living together. This, it seems to me, is the rule established by *Commonwealth v. George,* 358 Pa. 118, 123, 56 A. 2d 228 (1948). This rule might be subject to a few exceptions, as, for example, where a husband and father has been regularly drinking his pay before paying the grocer, but certainly the case before us here has nothing to take it out of the general rule. For these reasons, I concur in our reversing the support order.

Rhodes, P. J., and Wright, J., join in this opinion.