## Commonwealth ex rel. Glenn *v.* Glenn, Appellant.

Argued June 14, 1966. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Eugene John Lewis,* for appellant.

*Sadie T. M. Alexander,* for appellee.

OPINION BY WRIGHT, J., September 15, 1966:

This is an appeal by Robert S. Glenn from an order of the County Court of Philadelphia, entered January 19, 1966, requiring him to pay to his wife, Ann Glenn, the sum of $60.00 per week for the support of their three children, Robert born May 7, 1950, Sandra born August 22, 1954, and James born October 11, 1956. We are not concerned with the amount of the order. The issue before us is whether any order should have been entered under the circumstances.

The question raised by this appeal is one which has been presented with increasing frequency. It is thus stated in appellant's brief: "Can a husband who is living with his wife and children be charged with neglect when he furnishes food, pays rent, utilities and telephone, medical and dental bills and contributes to the clothing and personal needs of his children." Counsel for appellee states the question to be whether there was "sufficient evidence produced to support the finding of the court below that there was failure to support".

Section 733 of The Penal Code[1] provides for the entry of a support order "If any husband or father, being within the limits of this Commonwealth separates himself from his wife or from his children or from wife and children without reasonable cause or neglects to maintain his wife or children". As stated in *Commonwealth v. Peters,* 178 Pa. Superior Ct. 82, 113 A. 2d 327, a husband may be prosecuted under this section although there is no proof of desertion, provided there is neglect to maintain. However, it has not been our usual policy to sanction the entry of a support order where the parties are living together. In the words of Mr. Justice PATTERSON in *Commonwealth v. George,* 358 Pa. 118, 56 A. 2d 228: "The arm of the court is not empowered to reach into the home and to determine the manner in which the earnings of a husband shall be expended where he has neither deserted his wife without cause nor neglected to support her and their children. . . The statute was never intended to constitute a court a sounding board for domestic financial disagreements, nor a board of arbitration to determine the extent to which a husband is required to recognize the budget suggested by the wife or her demands for control over the purse strings".

In its practical aspect, the issue is the extent to which we may go in regulating the financial affairs of a family living, eating and sleeping together. The entry of a support order was approved in *Commonwealth ex rel. Turner v. Turner,* 192 Pa. Superior Ct. 502, 161 A. 2d 922, wherein the husband's only contribution to the table was a payment of $9.00 in a three-week period. His wife and child were compelled to eat their meals at the home of the wife's mother. On the other hand, in the subsequent case of *Commonwealth ex rel. Hamilton v. Hamilton,* 199 Pa. Superior Ct. 255, 184 A. 2d

---

[1] Act of June 24, 1939, P. L. 872, 18 P.S. 4733.

361, in an opinion by Judge (now President Judge) ERVIN, we reversed an order of support where the parties were living together. There was a concurring opinion by Judge WOODSIDE, joined by President Judge RHODES and the writer, wherein the following pertinent statement appears: "The law does not contemplate that the courts should attempt to solve the financial difficulties of a husband and wife who are living together. Although the majority has advanced sufficient reasons for reversing the order of support after it examined the family financial problems, I believe the order should be set aside solely on the more basic ground that the court should not attempt to allocate the husband's pay check to the family bills when the husband and wife are living together. This, it seems to me, is the rule established by Commonwealth v. George, 358 Pa. 118, 123, 56 A. 2d 228 (1948). This rule might be subject to a few exceptions, as, for example, where a husband and father has been regularly drinking his pay before paying the grocer, but certainly the case before us here has nothing to take it out of the general rule".

In *Commonwealth ex rel. Mitterling v. Mitterling,* 201 Pa. Superior Ct. 538, 193 A. 2d 618, speaking for a unanimous court, Judge WOODSIDE restated the general rule as follows: "Although there are exceptions . . . the court will not ordinarily reach into the home to determine the manner in which the earnings of a husband shall be expended. . . It is impractical, if not impossible, for a court to take sufficient testimony on specific expenditures for living expenses to make an intelligent finding on the adequacy of the support furnished by the head of a household to the other members of the household". See also *Commonwealth ex rel. Decker v. Decker,* 204 Pa. Superior Ct. 156, 203 A. 2d 343, wherein the following language appears: "The support order should not have been entered in the first place. When the original order was made, the parties involved, Mr.

and Mrs. Decker, were living together under the same roof and eating at the same table. . . Courts have no right to put their fingers into the family pocketbook and divide the family income".

It is readily apparent that, as a general rule, this court has been reluctant to impose a mandatory budget upon a husband and father so long as the family unit remains intact and there is no startlingly obvious evidence of neglect. It is our view that a recital of the factual situation in the instant case, as disclosed by an examination of the record, will clearly demonstrate that the court below erred in not following the general rule. The order will therefore be reversed.

The parties were married on February 4, 1952, in Spartanburg, South Carolina. They presently reside at 32 South Yewdall Street in the City of Philadelphia in an apartment containing a living room, two bedrooms, kitchen and bath. The husband is obviously an industrious man, as he holds two jobs. He is a teacher in the West Philadelphia High School and is also employed at the Thirtieth Street Station Post Office, working total hours "from nine-thirty in the morning to twelve-thirty at night".[2] The wife is also regularly employed as a baby sitter for which she is paid "very well". The husband takes care of the rent for the apartment and all the utilities. He gives his wife $50.00 every two weeks. He pays a part of the medical and drug bills, and carries Blue Cross and Blue Shield. He buys some of the children's clothing. Although the parties occupy the same bed, there is considerable unpleasantness between them. For instance, the wife converted to her own use a tax refund check in amount of $491.00, asserting that "my husband owed me a great deal of money and I felt he should pay me back". She

---

[2] One of the wife's complaints was that the husband did not spend much time at home.

also appropriated two bonds belonging to the husband in total amount of $92.00. In his effort to find a larger apartment, the husband located "a house to rent at 518 South Alden Street and she didn't want to go there". Counsel for the wife responded: "She didn't want to rent, she wanted to buy if you would put down a down payment".

The record plainly reveals that the wife's basic complaint was dissatisfaction with their mode of living. As previously indicated, she wanted a home of her own. "I am ashamed of my house". She grew tired of her furniture because it was thirteen years old, and ordered new furniture which has not yet been paid for. She complained that the "bills didn't get paid like they should". In itemizing the amounts which the wife felt were necessary to support the family, she included the cost of day camp for Sandra and James and art camp for Robert. The annual clothing allowances which she requested were $500.00 for Robert, $350.00 for Sandra, and $300.00 for James. She testified that, as a Christmas present in 1965, her husband gave Sandra a typewriter "which I disapprove of". The husband presently owes $260.00 to Strawbridge and Clothier, $191.00 to Household Finance Company, $500.00 to First Pennsylvania Company, and $250.00 to Teacher's Service, also outstanding are several smaller bills. There is no evidence that the husband squanders his money, indeed he does not even own an automobile.

To summarize, entirely absent in this case are the usual accusations of excessive drinking, gambling, and extra-marital affairs. About the worst that can be said of this hard-working husband is that he did not spend his money as his wife thought it should be spent. We do not favor complete abdication by the husband and father of his role as head of the household. The testimony in the case at bar does not indicate that the children were undernourished or poorly clothed. There

212

is nothing to show that they have been deprived of necessary medical and dental services. In short, the record is devoid of sufficient evidence to establish actual neglect to maintain.

Order reversed.

HOFFMAN, J., would affirm on the opinion of the court below.