## Keenan v. Penn Hills School District

*John W. Ford,* for plaintiffs.

*James J. McElligott,* for defendant.

FINKELHOR, J., March 28, 1974.—This action, in assumpsit for the refund of a per capita tax in the

amount of $10 from the Penn Hills School District, was before the court en banc on motions for summary judgment by both parties under Pennsylvania Rule of Civil Procedure 1035. Pursuant to a consent order, signed October 23, 1973, and a subsequent order of court, dated November 9, 1973, plaintiffs' and defendant's motions for summary judgment were withdrawn without prejudice and the parties agreed to prepare a case stated for submission to the court.

The question at issue is whether plaintiffs, Naomi Keenan and Elizabeth Krahling, married women living with their spouses, who work solely within the home and have no income other than the income of their respective husbands, are "persons whose total income from all sources is less than $2,000.00" and, therefore, exempt from the per capita tax of the Penn Hills School District.

In bringing this action, the two plaintiffs seek to bring it on behalf of all other women, similarly situated in Penn Hills Township, under Pa. R. C. P. 2230.[1]

The facts, as stipulated by the parties, can be summarized briefly. Penn Hills School District passed an initial per capita tax in the sum of $5 on or about May 24, 1928, pursuant to the then Pennsylvania Public School Code of March 10, 1949, P. L. 30, 24 PS §6-679. The current per capita tax in the sum of $10 is levied by the school district under the authority of both the Public School Code of 1949, as amended, 24 PS §6-679 Supp. and The Local Tax Enabling Act of December 31, 1965, P. L. 1257, as amended, 53 PS §6902, and is both an occupational privilege and a per capita tax. See Archbold v. Codorus Township

---

[1] While plaintiffs have not perfected this suit as a class action, defendant has not raised this issue.

School District, 33 D. & C. 2d 311 (1963). Both parties agree that the tax was properly enacted.

On or about September 14, 1971, by resolution, the school district exempted from the per capita tax "all persons whose total income *from all sources* is less than $2,000.00 per annum."

The two plaintiffs paid the percapita tax of $10 for the period July 1, 1971, to June 30, 1972, and have applied for a refund.

After the passage of the exemption resolution, the school district set up procedures for the refund of the per capita tax including (1) the filing of an affidavit for exemption, and (2) a questionnaire of 11 questions relating to the financial status, age, marital status and need of the applicant. Plaintiffs have executed the affidavit but it is not clear from the stipulation whether the two plaintiffs named in this proceeding have also executed the questionnaire. Plaintiffs have not received a refund of the per capita tax.

## STATUTORY AND CONSTITUTIONAL PROVISIONS

The provision for a per capita tax for school purposes has its root in the Act of May 21, 1857, P. L. 631, and originally was levied on each and every *male* inhabitant of 21 years and upwards. The present version, as amended by Act No. 35 of July 9, 1971, P. L. 210, 24 PS §6-679, provides as follows:

"Each resident or inhabitant, over eighteen years of age, in every school district of the second, third, and fourth class, which shall levy such tax, shall annually pay, for the use of the school district in which he or she is a resident or inhabitant, a per capita tax of not less than one dollar nor more than five dollars, as may be assessed by the local school

district. Every husband against whose wife a per capita tax is levied shall be liable for the payment of such tax. Collection thereof from such husband may be made and enforced in the manner provided by law for the collection and enforcement of payment of other taxes owing by such husband, including the collection thereof from the husband's employer.

"Each school district may exempt any person *whose total income from all sources is less than two thousand dollars per annum from its per capita tax or any portion thereof.* The school district may adopt and employ regulations for the processing of claims for the exemption. As amended 1971, July 9, P. L. 210, No. 35, §1; 1972, June 16, P. L. 383, No. 138, §4." (Italics supplied.)

The provision for the $2,000 exemption was added by the legislature in 1971.

The Local Tax Enabling Act has a similar exemption provision, also added in 1971, to permit each local taxing authority to "exempt any person whose total income from all sources is less than two-thousand ($2,000) per annum": Act No. 33 of July 9, 1971.

Questions of tax exemption, based upon income from the per capita-occupation privilege[2] taxes, were extensively considered in Saulsbury v. Bethlehem Steel Company, 413 Pa. 316 (1964), where the court held that the exemption of individuals with an annual income of less than $600 violated the uniformity provisions of the then Pennsylvania Constitution.

---

[2] The Local Tax Enabling Act authorizes a flat occupational privilege tax in the amount of $10 and differs from an occupation tax which is based on the assessment of the value of a given occupation. See Lynch v. Owen J. Roberts School District, 430 Pa. 461 (1968); Crosson v. Downingtown Area School District, 440 Pa. 468 (1970).

The court stated:

"While different subjects may be reasonably classified for tax purposes (see, Jones & Laughlin Tax Assess. Case, 405 Pa. 421, 175 A. 2d 856 (1961)), there must be no lack of uniformity within the class, either on the given subject of the tax or the persons affected as payers . . . If a tax is levied on an occupational privilege, it must apply to all who share the privilege. Part of the class may not be excused, regardless of the motive behind the action": 413 Pa. at 319-20.

As a result of Saulsbury and companion cases, the Pennsylvania Constitution was amended November 2, 1965, to specifically permit exemption from *occupational privilege taxes* for those persons deriving less than $1,000 per year from such occupation.

In 1968 after the constitutional convention and the resulting constitutional changes, allowable exemptions from tax liability were restated in article VIII, sec. 2(b)(ii), of the revised Constitution to provide as follows:

"Establish as a class or classes of subjects of taxation the property or privileges of persons who, because of age, disability, infirmity or poverty are determined to be in need of tax exemption or of special tax provisions and for any such class or classes, uniform standards and qualifications. The Commonwealth, or any other taxing authority, may adopt or employ such class or classes and standards and qualifications, and except as herein provided may impose taxes, grant exemptions, or make special tax provisions in accordance therewith."

Pursuant to this constitutional provision, the Pennsylvania Legislature provided for the $2,000 exemption as set forth in Acts 33 and 35 of 1971, supra, which were further implemented by the resolution of the Penn Hills School District of September 14, 1971, as follows:

## "RESOLUTION"

"In accordance with the authority granted by Act 35 of 1971, approved July 9, 1971, amending the Act of March 10, 1949, (P. L. 30) relating to the Public School System it is hereby moved by Mrs. Dietrich and seconded by Mr. Miller that the Penn Hills School District of the Commonwealth of Pa., does hereby exempt *ALL PERSONS,* whose total income from all sources is less than $2,000.00 per annum from the *per capita tax* levied by the Penn Hills School District and that the School District adopt and employ regulations for the processing of claims for this exemption."

A similar exemption was enacted by the school district for that portion of the per capita tax levied under the authority of the Local Tax Enabling Act.

## POSITION OF THE PARTIES

It is defendant school district's position that the Pennsylvania Constitution, as revised in 1968, provides four specific criteria for tax exemption: age, disability, infirmity or poverty; that Acts 33 and 35 of 1971, which provide exemptions for those persons earning $2,000 or less "from all sources," must be interpreted as a poverty exemption and, therefore, limited to those persons who are determined to be *in need* of tax exemption. Defendant further argues that the phrase "from all sources" includes not only monetary income but any and all benefits in kind including the "right of support" by the wife from the husband. Defendant relies on Federal tax cases which have held that the provision of living quarters and other benefits are taxable income: Sweeney v. United States, 285 F. 2d 444 (1961); Atlanta Biltmore Hotel Corporation v. Commissioner, 349 F. 2d 677 (5th Cir., 1965).

It is plaintiffs' position that the $2,000 exemption included in the 1971 acts and the school district reso-

lution, in effect, establishes a legislative definition of "poverty" and that defendant cannot pick and choose amongst those persons falling within the defined class to include "senior citizens, the poor and young people trying to accumulate resources for further education," as opposed to a wife without independent income. Plaintiffs also reject the analogy of payment in kind based on Federal income tax law as between husband and wife.

In their stipulation, both parties agree that the resolution of exemption of the Penn Hills School District and presumably Acts No. 33 and 35 of 1971 are constitutional.[3]

## LIABILITY OF PLAINTIFFS

Pennsylvania courts have previously ruled that housewives do indeed have occupations of sufficient value to support a tax assessment and a tax levied thereon as an occupation tax: Miller v. York Imperial School District, 23 D. & C. 2d 406 (1960).

To ascertain whether plaintiffs in this action are entitled to exemptions from the Penn Hills per capita tax, it must be determined not whether a housewife is an "occupation" but whether the income of plaintiffs from all sources is less than $2,000 per annum. As plaintiffs stipulate that they have no independent

---

3. Based upon the Supreme Court opinion in Saulsbury v. Bethlehem Steel Company, 413 Pa. 316 (1964), and the removal of the constitutional amendment which specifically permitted a $1,000 exemption in terms of the occupational privilege tax, there may be a valid question as to whether a flat monetary exemption meets the present constitutional provision which provides for exemption for age, disability, infirmity or poverty. However, as plaintiffs have not raised this constitutional issue, the case will be resolved on nonconstitutional rather than constitutional grounds: Lynch v. Owen J. Roberts School District, 430 Pa. 461 (1968); Shuman v. Bernie's Drug Concessions, 409 Pa. 539 (1963).

personal income, the issue is whether, pursuant to the husband's obligation of support, the income of the husband is also the income of the wife. If all or even a part of the husband's income can be attributed to the wife, plaintiffs do not fall within the tax exemption as set forth in the school district resolution.

Under common-law notions of the rights and duties of husband and wife under the marriage agreement, sex-role stereotypes supported principles of property law which allocated even the wife's property to the control and supervision of the husband.[4]

As stated in a recent New York University Law Review article exploring in historical perspective the legal rights of the married woman:

"The *traditional common law view* is that marriage obligates a woman to perform household services in return for the benefit of her husband's duty of support, thus absorbing the wife's entire economic worth into the marital unit while requiring the husband's economic participation in that unit only to the extent of support. From this axiom follows the corollary, any property or income accumulated over and above the amount necessary for family support belongs solely to the husband unless he chooses some other form of ownership": 47 New York University Law Review, 1033, 1036 (1972).

This view had two consequences which governed the property rights of married women, relevant in the instant case: wives were not considered as having

---

[4] The role of the wife vis-a-vis the husband was enshrined in verse by Alfred, Lord Tennyson, in 1842 as follows:

"He will hold thee, when his passion shall
  have spent its novel force,
Something better than his dog, a little dearer
  than his horse."
[Locksley Hall]

property rights in the income brought into the family unit by the husband by virtue of their *status* as wives; nor was any liquidated part of the family income theirs by virtue of the *work* they performed at home. The economic right of the wife and the duty of the husband was the right or duty of support. See Johnston, John D., Jr.; "Sex and Property; the Common Law Tradition," 47 New York L. Rev. 1033, et seq.

The Pennsylvania married women's property laws, first enacted in 1893 and subsequently extended by amendment, removed the major disabilities placed on the married woman under the common law to give her control over her own property and income, but left intact the basic legal structure of family rights and responsibilities: Act of June 8, 1893, P. L. 344, as amended, 48 PS §31, et seq.; Scott v. Scott, 14 Adams 14 (1972).

In the same manner, while the recent amendment to article I of the Pennsylvania Constitution, the Equal Rights Amendment, prohibits the abridgment of rights on the basis of sex, the amendment per se does not create new affirmative rights of either party of the marriage to the property or income of the other spouse. Neither the legislature nor the courts has interpreted the married women's property acts or the Equal Rights Amendment as conferring upon married women a property right enforceable against their husbands for the value of their labor performed within the home.

In fact, the Pennsylvania courts have followed the view that during the marriage the wife has no right to any portion of the husband's income per se. In Bank of Pittsburgh v. Purcell, 286 Pa. 114 (1926), an equity action by a wife to have a resulting trust created in the property claimed by the creditors of the husband, the court ruled that evidence that the wife "by thrift and economy enables her husband to accumulate

property, held in his name, vests her with no interest therein *except that of a spouse."* (Italics supplied.)

The distinction between the wife's personal "right to support" (her right as a spouse) and her right to a portion of the income of the husband is clearly drawn in the line of Pennsylvania cases which consider support decrees within the context of an on-going marriage relationship.

The general rule is succinctly stated by the Pennsylvania Supreme Court in Commonwealth v. George, 358 Pa. 118, 123-24 (1948):

"The arm of the court is not empowered to reach into the home and to determine the manner in which *the earnings of a husband* shall be expended where he has neither deserted his wife without cause nor neglected to support her or their children. [Italics supplied.]

"We decide only that where, as here, the husband provides a home, food, clothing and reasonable medical attention, he cannot be directed to pay a given stipend to the wife so that she may have it available for her own personal disposition. The method whereby a husband secures to his wife and family the necessities of life is not a proper subject for judicial consideration and determination in the absence of proof of desertion without cause or neglect to maintain."

As the basis of the wife's complaint in the George case was the failure of the husband to allot to her moneys for her own personal use, exempt from his control and direction, a clear distinction is made between the right of support and an allocated share of the husband's income.

As stated in numerous Pennsylvania cases since that George decision, for the duration of the marriage the husband as "head of the household" has the right to allocate the family income derived from his

earnings, to determine the amounts to be allocated to food, clothing, medical and dental services and even recreation for *both* wife and children and, in the absence of neglect, desertion or other proven "failure to support," the right of the wife-partner for a specific liquidated share of the husband's income has been denied: Commonwealth ex rel. Gauby v. Gauby, 223 Pa. Superior Ct. 92 (1972); Commonwealth ex rel. Glenn v. Glenn, 208 Pa. Superior Ct. 206 (1966); Commonwealth ex rel. Hamilton v. Hamilton, 199 Pa. Superior Ct. 255 (1962).

This view of the relative rights, duties and powers of husband and wife is also the basis for the *granting* of support decrees once the parties are separated. Thus, it is only when the marriage relationship has disintegrated and the husband has "forfeited his position as head of the household" that the wife's personal right to support is transformed from goods and necessities, provided at the discretion of the husband, to a sum certain dictated by the courts: Commonwealth ex rel. Iezzi v. Iezzi, 200 Pa. Superior Ct. 584, 588 (1963).

While the school code, as amended in 1945, Act 33 of 1971, 24 PS §6-679, provides for liability on the part of the husband for the wife's per capita tax, including the collection thereof from the husband's employer, this does not transform the wife's "right of support" to tangible income. While this section was upheld as an incidence of the husband's legal duty to support his wife in Hartman v. Columbia Malleable Castings Corp.,[5] 164 Pa. Superior Ct. 1 (1949), this decision antedated the Pennsylvania Equal Rights Amendment of 1971 and did not raise the issue of exemption based

---

[5] As this section does not provide reciprocal obligations of *both* husband and wife, this opinion is not in accord with recent Supreme Court decisions.

on income involved in the instant proceeding. See Commonwealth ex rel. Lukens v. Lukens, 224 Pa. Superior Ct. 227 (1973); Weigand v. Weigand, 226 Pa. Superior Ct. 278, 310 A. 2d 426 (1973); Conway v. Dana, March term, 1973 (no. 63, opinion filed March 26, 1974).

Defendant's contention that income "from all sources" for Federal tax purposes includes any and all benefits which a person may receive in cash or in kind does not govern the husband-wife relationship: U. S. v. Robbins, 269 U. S. 315 (1926); U. S. v. Mitchell, 403 U. S. 190 (1971).

In fact, courts in other jurisdictions have disallowed contracts between husband and wife for the payment of wages because of the wife's duty to care for the husband without specific compensation: Tellez v. Tellez, 51 N. M. 416, 186 P. 2d 390 (N.M., 1947); Wirth v. Wirth, 326 N. Y. Supp. 2d 308, 38 A. D. 2d 611 (1971). As stated in Freppon v. Hittner, 91 N. J. Super. 9, 218 A. 2d 890 (1966): "The relationship of a wife as housewife in the household to her husband is not one of employment."

Therefore, in determining whether a married individual husband or wife has an income from any source in excess of $2,000 per annum, as stated in the Penn Hills School District resolution, the income or a portion of the income of the other spouse cannot be allocated to preclude the exemption.

In reaching the position that the wife in an established marriage has no right to a specific liquidated portion of the income of the husband for services rendered, this court is not approving this lack of legal recognition of the manifold duties and contributions of the female member of the marriage agreement.

In Willcox v. Penn Mutual Life Insurance Company, 357 Pa. 581 (1947), which invalidated the Pennsyl-

vania Community Property Act, the court stated, at page 593:

"[I]t is not contended that the legislature may not establish a common ownership of the *earnings* of the husband and wife accruing in the future, it being recognized that, while the husband is usually the breadwinner, the wife, by her management of the household and rearing of the children, makes it possible for the husband to devote himself more freely to his income-producing activities; this justifies the pooling of their resources thus derived from what is essentially a common enterprise." (Emphasis in original.)

However, while lip service has been given to the role of the wife-mother-housekeeper-nurse-laundress-cook-chauffeur-teacher and all of the other occupations included within the anomolous term of "housewife," neither the appellate courts nor the legislature has recognized any right to compensation for these services other than the equally anomolous "right to support."

As stated in Bigler v. Penn Manor School District, 63 Lanc. 409, 411 (1972):

"Certainly there are compensations and rewards in being a housewife but she could not pay taxes with the love and affection she receives (very frequently in too small portions) from her family. The satisfaction a housewife obtains from faithfully performing her many tasks for her family has a value but not the kind of value with which the tax collector can be paid."

To support the changing status of women, plaintiffs' brief cites the well known television commercial, advertising a brand of women's cigarettes, to the effect "You've come a long way, baby." Plaintiffs might have added, "You have a long way to go."

Defendant also raises the argument that women

supported by husbands whose income exceeds the exemption (or conversely husbands supported by wives) do not fall within the ordinary meaning of "poverty" or need as set forth in Article VIII of the Pennsylvania Constitution. A reading of the constitutional debates, prior to the adoption of the 1968 constitutional amendments, establishes the intent of the convention to delegate to the General Assembly the implementation of this constitutional provision.[6] The legislature has exercised this delegated power in Acts 33 and 35 of 1971, supra, and has, in effect, defined "poverty" as those persons whose income is less than $2,000 per annum.

In Amidon v. Kane, 444 Pa. 38 (1971), the Personal Income Tax Act of March 4, 1971, P. L. 6, 72 PS §7107, et seq., was held in violation of the uniformity clause of the Pennsylvania Constitution which requires that taxes be uniform upon *all* persons in the same classification subject only to exemptions set forth within the Constitution itself. In reaching this result, the Su-

---

[6] "Barry: My question is this: Must there be a poverty standard to obtain this exemption? I know, for example, that a lot of college students, and so forth, earn less than $1,000.00. They are not poor, but they are otherwise entitled to this exemption, normally, now. Would there have to be some kind of standard set up to claim this exemption?

"Woodring: Mr. President, we feel that is a legislative matter, not a constitutional one, and it is provided for in lines 6 & 7. "The General Assembly may, by general laws, establish as a class or classes of subjects of taxation the property," and so on. We feel that it would be subject to such laws as the General Assembly would provide.

"Barry: But was it your intention to exempt, for example, college students and other people who earn less than $1,000.00 a year but who might not qualify on the maintenance test?

"Woodring: *If they would qualify under the standards set by the General Assembly, they would be exempt, yes, sir.*" (Italics supplied.)

preme Court cited Saulsbury v. Bethlehem Steel Company, supra, on the constitutional prerequisite of uniformity within a given class.

Thus, the legislature having defined poverty as those persons receiving less than $2,000 in income from all sources, the Penn Hills School District cannot distinguish between members of this class based upon additional criteria of "need" or family relationships.

As the court has found that the two plaintiffs do not have income in excess of $2,000, they are members of the class included within the exemption of the Penn Hills School District resolutions and are entitled to the refund provided in the resolution.

### ORDER

And now, to wit, March 28, 1974, upon the stipulation, argument and briefs of the parties, it is hereby ordered that judgment shall be entered in favor of plaintiffs.

It is further ordered that subject to the filing of the required application forms for exemption, defendant school district shall refund to plaintiffs the per capita tax in the amount of $10 paid by plaintiffs for the year 1971-1972, and any year thereafter.

Each party to pay his own costs.